OGDEN et al. v. CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, First Department.   December 2, 1910.)

1. MUNICIPAL CORPORATIONS (§ 663*)—PROPERTY ABUTTING ON STREETS—
   RIGHTS OF OWNERS.
     An owner of property abutting on a street has, as an incident to such
   ownership, an easement in the street as a means. of access to his prop-
   erty, and he is entitled to lateral support and to freedom from physical
   interference with his property.
     [Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. §
   663.*]

2. EMINENT DOMAIN (§ 106*)—PROPERTY ABUTTING ON STREETS—RIGHTS OF
   OWNERS.
     The construction by a city of docks for the use of others for compen-
   sation, thereby interfering with a street, is not a use to which a street
   may be applied, so as to interfere with an abutting owner's easement of
   access without compensation therefor.
     [Ed. Note.—For other cases see Eminent Domain, Cent. Dig. §§ 282–
   289; Dec. Dig. § 106.*]

3. EMINENT DOMAIN (§ 116*)—PROPERTY ABUTTING ON STREETS—RIGHTS OF
   OWNERS.
     A city constructed docks for use by others for compensation.  The
   contractor doing the work excavated a street so that an abutting owner
   lost for two years all access to his property and was thereby deprived
   of its use for that period.  A large part of his land fell into the excava-
   tion.  Held, that the damages inflicted on the abutting owner resulting
   from depriving him of the use of the street and from his land falling
   into the excavation were direct, and not consequential, and he could
   recover substantial damages.
     [Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 116.*]

4. EQUITY (§ 39*)—JURISDICTION—RETENTION OF JURISDICTION TO AWARD
   DAMAGES.
     Where a court of equity assumed jurisdiction of a case, and on the
   trial it appeared that the necessity for equitable relief had passed, the
   court should proceed to award the damages sustained, in the absence of
   any request by either party for a jury.
     [Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 104–114;  Dec.
   Dig. § 39.*]

     Dowling and McLaughlin, JJ., dissenting.

Appeal from Special Term, New York County.

Action by Francis L. Ogden and another against the City of New
York and another.  From a judgment of dismissal, plaintiffs appeal.
Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and McLAUGHLIN, MILL-
ER, LAUGHLIN, and DOWLING, JJ.

William Mason Smith, for appellants.
Theodore Connoly, for respondent City of New York.

DOWLING, J.   The plaintiffs are the owners of adjoining parcels
of land situate on the northerly side of Twenty-Second street, ex-
tending easterly from the easterly side of Thirteenth avenue, in the
city of New York.   Pursuant to a general scheme of improvement of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the North river water front from Bloomfield street to Twenty-Third street, in the interest of commerce and navigation, plans were duly adopted by the department of docks and ferries and further approved by the commissioners of the sinking fund, in conformity with sections 817 and 819 of the Greater New York Charter. Upon these plans certain proposed changes were shown which included dredging and bulkheading work to. be done in both Thirteenth avenue and Twenty-Second street. On October 17, 1902, the city acquired title by condemnation to the property on the southerly side of Twenty-Second street, as well as to the bulkhead on the westerly side of Thirteenth avenue between Twenty-Second and Twenty-Third streets, whereof the Erie Railroad was then in possession; it being also the lessee of plaintiffs' premises. On November 6, 1902, the city entered into a contract with the defendant R. G. Packard Company, whereby the latter was to dredge the land south of the southerly line of Twenty-Second street and also northerly a distance of 35 feet from said southerly line. The dredging was to be done to a depth of 30 feet below mean low-water level; the elevation of the land prior thereto. being about 4 feet above that level. West Twenty-Second street was a regularly paved public street and was 60 feet in width.

The work under this contract was begun January 1, 1903. During its progress, and as a direct result of the operation of the dredge entirely within the line of the city's property and on the street (for the line of the dredging never came any nearer than 25 feet to the line of the plaintiffs' property), and because of the nature of the soil on the plaintiffs' property (which was made ground, composed of dirt and rubbish), there fell into the excavation made by the dredging operations a quantity of plaintiffs' land about equal in width on the surface to the depth to which the excavation had been carried, which varies from 20 to 30 feet. All this occurred without the contractor ever encroaching on, or digging into, the plaintiffs' property.

With respect to this work so done the following facts appear: (1) To carry out the plan of dock improvement duly approved, it was necessary to build a bulkhead on the southerly side of Twenty-Second street. (2) It was necessary to dredge far enough to get to solid bottom through the made ground, in order to be able to drive spiles so as to get a proper foundation for the stone bulkhead wall. (3) To dredge to a maximum depth of 30 feet and to carry that dredging to a point 35 feet northerly of the southerly line of Twenty-Second street was, in the judgment of the appropriate city officials, necessary in order to secure a proper foundation; this was the contract requirement, and it is not sought to be established that it was not a necessary and proper essential to the bulkheading work to be done. (4) No dredging was ever done north of the line prescribed in the contract. Plaintiffs do not dispute this, for the court in effect so found at their request. Lines were drawn on the asphalt of Twenty-Second street and ranges put up, to insure the impossibility of any deviation. (5) No proof was made of any negligence on the part of the contractor in the performance of its contract. There was some question sought to be raised as to a shed belonging to the Erie Rail-

road having been hit by the bucket of the dredge on several occasions; but, even if this was established (which it was not), it would not insure to plaintiffs' benefit, as plaintiffs concede that the railroad would be entitled to such damages, and not they. (6) The fence which was erected on plaintiffs' land adjoined the excavated street, was for the protection of the public, and was an incident to the use of the street itself by the city's contractor for the purposes of the dredging. (7) When the improvement was completed, there was a paved street in front of plaintiffs' premises of the same character and width as theretofore, there was no permanent structure erected in, under, or above the highway, and plaintiffs' land had been filled in and raised to the level of the street without expense to plaintiffs. (8) Upon the proofs there was no evidence of any negligence, unskillfulness, or unreasonable delay in the prosecution of any of the work described. (9) The city ultimately acquired plaintiffs' property by condemnation.

This action was commenced November 30, 1904, and the trial occurred June 18 to 25, 1906. The decision bears date May 7, 1908. At the time of the commencement of the action, the plaintiffs complained of the falling of a portion of their land into the excavation, of the flooding and rendering impassable of the street, and of the erection of a fence on their property; all constituting a continuing trespass upon and nuisance to the plaintiffs. By the time of the trial some of these conditions had been remedied, so that plaintiffs then relied, for their right to equitable relief by way of injunction, on the fact that the street had not yet been repaired (although a contract had been advertised for letting for the doing of that work) and on the further fact that a portion of the fence still remained in position upon their property.

The first question raised is as to the right of a court of equity to take cognizance of the case and grant relief by way of damages only, where no equitable relief remained to which plaintiffs were entitled. The test of the jurisdiction of a court of equity is whether facts exist at the time of the commencement of the action sufficient to confer jurisdiction on the court. Jurisdiction having been thus acquired, the only remaining question is whether, at the time of the trial, facts still exist which call for the granting of relief by the court. This merely goes to the question of the amount of relief, if any, to be then granted. Having once acquired jurisdiction, the court should retain control of the cause and do justice between the parties, awarding such relief as may be appropriate, and granting money damages only, if that be the only relief to which plaintiff is entitled, unless a jury trial be duly demanded, when it must be sent to be tried in that forum. Miller v. Edison Electric Illuminating Co., 184 N. Y. 17, 76 N. E. 734, 3 L. R. A. (N. S.) 1060; Van Allen v. N. Y. Elev. R. R. Co., 144 N. Y. 174, 38 N. E. 997; Koehler v. N. Y. Elev. R. R. Co., 159 N. Y. 218, 53 N. E. 1114; McNulty v. Mount Morris Elec. Light Co., 172 N. Y. 410, 65 N. E. 196. In this case no jury trial was demanded by the defendants, and, therefore, if plaintiffs had made out a cause of action for damages, the court was bound to award them. But on

the present record plaintiff has proved nothing more than consequential damages, the direct and necessary result of the work properly done in furtherance and execution of a public improvement. · The plaintiffs' grievances are threefold: (1) The closing of West Twenty-Second street,· in front of their premises, for upwards of two years, during most of which time it was excavated and under water; (2) the washing away of the soil from part of their property adjoining the street; (3) the erection of a fence some 5 feet high on their property extending some 30 feet north thereon, and then westwardly to Thirteenth avenue.

As the fence complained of was erected only for the purpose of preventing persons from falling into the excavated portion of the street and into such part of plaintiffs' property as had fallen away because of the excavation, the question of the propriety of its existence depends on whether or not the city had a right to suspend the use of the street temporarily in order to prosecute the main work. If the city had such a right, the placing of the fence was a mere incident to the work, and would have been for plaintiffs' benefit, in that it prevented the possibility of any liability on their part for damages to any one who might be injured while on their land, by reason of the presence of the excavation or the subsidence therein of soil from their property. As to the suspension of the use of the street itself, it was purely a temporary one. It is not claimed that the work could have been done in any other way, or that the requisite foundations could have been secured without the excavation and dredging resorted to. The very nature of the soil rendered necessary the depth and width to which the work was carried. From the evidence herein, the operations proceeded with all reasonable speed, and due diligence was used to restore the street to its public use as soon as possible. The delay in repaving was explained by the ʻfact that the soil subsided, and it was necessary to await its complete settlement before the paving was done; but the final steps to pave it had been taken before the trial was had. The premises owned by plaintiffs were not improved with any buildings except a freighthouse, which was the property of the Erie Railroad. When the street was repaired, and the plaintiffs' land brought up to its level, conditions were permanently restored to what they had been before the dredging began. The street remained a public highway undiminished in width, unrestricted in use, and with no additional structures or burdens upon, over, or under it. The third grievance, that of the washing away of the soil from a portion of plaintiffs' premises, was inevitable. The very nature of that soil, being made ground, loose and unstable in its nature, rendered unavoidable its sliding into the open cut, even without the influence of such wash as was caused by the continual dropping and raising of the bucket of the dredge. No precaution could have prevented this result. ·

The rule in regard to consequential damages is laid down in Atwater v. Trustees of Village of Canandaigua, 124 N. Y. 602, 27 N. E. 385:

"The doctrine, however, is well established in this state that public officers lawfully employed in making public improvements, and corporations engaged

in work of a public nature, authorized by law, are not liable for consequential damages occasioned by it to others unless caused by misconduct, negligence, or unskillfulness (Radcliff's Ex'rs v. Mayor, etc., 4 N. Y. 195 [53 Am. Dec. 357]; Bellinger v. N. Y. C. R. R. Co., 23 N. Y. 42; Moyer v. N. Y. C. & H. R. R. Co., 88 N. Y. 351; Uline v. N. Y. C. & H. R. R. Co., 101 N. Y. 98 [4 N. E. 536, 54 Am. Rep. 661]), and such is the weight of authority elsewhere (Transportation Co. v. Chicago, 99 U. S. 635-641 [25 L. Ed. 336]). * * * And assuming, as we do, for the purpose of the question now under consideration, that it was such (i. e., a necessity for the purpose of the work of public improvement), and that they properly and expeditiously performed the work, it is not seen, within the doctrine before stated, how the defendants can be held liable for the consequences resulting from it to others. Within this rule serious injury to property may be occasioned by the lawful exercise of powers of public character pursuant to law, and if the work is carefully and skillfully performed the consequences may be damnum absque injuria, when the Legislature has provided for no compensation. * * *

"In the present case the action of the defendants in the performance of the work was confined within the limits where they had the right to execute it, and the effect upon the property beyond those bounds, resulting in damage, was the consequence of the performance of the work, and not the direct act of its execution by them. * * * The dam was but a temporary structure essential to make the public improvement and was removed when it was accomplished. The damages so resulting from such cause had quite uniformly been treated as furnishing no common-law remedy. Plant v. L. I. R. R. Co., 10 Barb. 26; Matter of Squire [125 N. Y. 131, 26 N. E. 142]. * * * The circumstances of this case are not such that the omission of the defendants to resort to all possible means to overcome the obstruction by the dam to the flow of waters into and through this channel during the time reasonably necessary for the work rendered them chargeable with negligence in the performance of their duties, although the consequence was that water remained on the plaintiff's premises longer that season than usual."

The rule was reaffirmed in Uppington v. City of New York, 165 N. Y. 222, 59 N. E. 91, 53 L. R. A. 550, and Bates v. Holbrook, 171 N. Y. 469, 64 N. E. 181, and has been followed without question in numerous decisions. That persons acting under an authority conferred by the Legislature to grade, level, and improve streets and highways, if they exercise proper care and skill, are not answerable for the consequential damages which may be sustained by those who own lands bounded by the street or highway, and this whether the damage results either from cutting down or raising the street, and even though the grade of the street had been before established, and the adjoining landowners had erected buildings with reference to such grade, was held in Radcliff v. Mayor of Brooklyn, 4 N. Y. 195, 53 Am. Dec. 357. So in Moore v. City of Albany, 98 N. Y. 396, it was said:

"As to the excavation outside of the street lines, this was clearly a trespass upon private property if made without the consent of the owners. If, in excavating with proper care within the street lines, the adjoining soil had fallen down into the street, its owners would have had no legal cause of complaint."

This case seems to come directly within the rules heretofore quoted. There is no proof of misconduct, negligence, or unskillfulness upon the part of the city or its contractor; the work was done entirely within the line of the city property; the temporary withdrawal of the street from public use was followed by its complete restoration thereto; the falling away of soil from plaintiffs' land was caused by its nature and was incident to the proper and careful doing of the con-

126 N.Y.S.—13

tractor's work; plaintiffs were put to no expense to restore the soil thus lost. While they have sustained inconvenience and perhaps loss, it was such as the law does not compensate them for, for their private loss is the unavoidable consequence of a work for the public good. The appellants rely upon the opinion In the Matter of the Application of the Board of Rapid Transit Railroad Commissioners of the City of New York Relative to Acquiring a Road, Easement, and Right of Way under Joralemon Street, in the Borough of Brooklyn, 197 N. Y. 81, 90 N. E. 456, as determining their rights to damages. But I do not view that decision as in any way overruling the rules laid down in the earlier cases. There the use made of Joralemon street was in constructing a subway therein and operating a railroad through the same. It was a municipal use, but not a street purpose. As the court said:

"A street purpose, on the other hand, is exclusively a highway purpose and any use of the street which improves or benefits it as a highway is a proper street use. Sewers, which drain surface waters, electric lights, which make traveling safer, and water mains, which may be used to sprinkle and clean, are all street purposes, as was shown by Judge Haight in the Larchmont Case [158 N. Y. 231, 52 N. E. 1092, 43 L. R. A. 672]." Page 97 of 197 N. Y., page 461 of 90 N. E.

The court held that not only surface structures and superstructures but substructures as well of the character of a subway railroad, must be governed by the same principle, "so that a railroad constructed beneath the surface of a street is a new burden, not contemplated by the original owner of the land when it was devoted to use as a street." Page 100 of 197 N. Y., page 462 of 90 N. E. Mynderse and Abbott, as owners of the fee in the street to the center thereof, were therefore held entitled to the full value of their property taken and to just compensation for the injury done to the remainder. With respect to Notman, who was an owner of abutting property, it was held that he was entitled to the lateral support of the land in the street, and that therefore he could recover the damages inflicted on his property by interference with the lateral support thereof, through the proper construction and operation of the underground road.

In the present case no such question arises, for there were no buildings belonging to plaintiffs upon the lands in question, and no proof of any damage caused by the falling in of the land, for the city restored it, and plaintiffs paid nothing to restore the land to its former condition. The case just cited was one where the damage was caused in the prosecution of a work which constituted a permanent change in and additional burden upon the use and character of the highway, even though it was under, and not upon, the surface thereof. The street was never restored to its former condition, for the underground structure remained there. It was devoted to an additional use, never contemplated when its character as a highway was created. Here the work in the street was incident to a reconstruction of the dock system of the city and of the highways forming a part thereof. When the street was filled in and repaired, its former character as a highway was restored, unchanged, with no additional burdens imposed upon it. There was no railway upon, over, or under

it, and no occupation for railroad use, which is, of course, essentially different from a public use. The lateral support theretofore given to plaintiffs' land by the land in the street was restored as soon as the latter was again filled in. The street led to a part of the dock system of the city, and its docks, wharves, piers, and bulkheads are a part of the public highways and devoted to public use. The fact that when the improvements were completed a bulkhead existed on the southerly side of the street, across from the plaintiffs' land, did not destroy the character of the street as a public highway.

The judgments appealed from should be modified, in view of all the circumstances, by striking out the provisions allowing costs to the city of New York and allowing plaintiffs to institute an action at law for trespass, and, as modified, affirmed, with costs to respondents.

McLAUGHLIN, J., concurs.

INGRAHAM, P. J. The facts in this case substantially as found by the court below are stated in the opinion of Mr. Justice DOWLING. My principal dissent from his opinion is in the view there taken that the plaintiff "has proved nothing more than consequential damages, the direct and necessary result of the work properly done in furtherance and execution of a public improvement." Although, even if that view is correct, I think the plaintiff is still entitled to damages.

The plaintiff was the owner of a piece of property abutting on Twenty-Second street, and as an incident of such ownership had an easement in the street as a means of access to his property. The city of New York was engaged in constructing docks upon the North river for the use of the city of New York. These docks were the private property of the municipality, erected by it for a public purpose, but for the use of which the city was to receive compensation. It erected docks, as it erected or acquired other municipal property, receiving from the lessees the rent agreed upon, or the dockage charge which it was authorized to collect and receive; but the construction of these docks was not a street use to which Twenty-Second street could be applied so as to interfere with the plaintiff's easement in the street without paying compensation therefor. In the construction of these docks, the city or its contractors caused such an excavation to be made as not only to temporarily destroy the Twenty-Second street itself, but to cause a considerable portion of the plaintiff's adjacent property to fall into the excavation, and this, together with the entire excavation of the street in front of the plaintiff's property, destroyed for a period of two years any use by plaintiff of his property.

Since this case was decided, the Court of Appeals, in an elaborate opinion, discussed the right of a municipality to interfere with the use of a street so as to destroy the easement of an abutting owner, and, I think, have settled the questions here presented. Matter of Rapid Transit R. Com'rs, 197 N. Y. 81, 90 N. E. 456. In that case the city was engaged in building a subway under one of the Brooklyn streets. It was held that the subway was a business enterprise of the city, through which money may be made or lost, the same as if it were owned by an ordinary railroad corporation; that it was

built by and belonged to the city as a proprietor, not as a sovereign; that the use made of a street by the city in constructing the subway and operating, or causing to be operated, a railroad therein, is not a "street use" as that term is known in the law; that a subway of the kind in question was built for a city purpose, as distinguished from a highway purpose; and as a result it was held that, if the use were for a street purpose, the city would not be liable for damages caused by proper construction in any case where it took no land; that when, however, the construction is not for a street use, even if it is for a public use, liability to the owner of the fee attaches to a city the same as to a railroad corporation; that as a logical sequence the right to damages must be governed by the same principle. It was also held that a mere abutter is entitled to a lateral support and to freedom from physical interference with his abutting property; that if the building of an abutting owner is torn down wholly or in part by a railroad company in constructing its road, and the city is to be treated as a railroad company, it is a virtual appropriation pro tanto of that building and logically calls for compensation. What was said in Muhlker v. New York & H. R. Co., 197 U. S. 563, 25 Sup. Ct. 525, 49 L. Ed. 872, that "there is something of mockery to give one access to property which may be unfit to live on when one gets there," was cited as applicable. It is also said:

"That the real ground on which an abutter is entitled to damages for the physical impairment of his property in a case like this is not that he owns the fee of the street, but owns land abutting on the street. The fee is of slight value and of no value whatever, except to support a theory leading to injustice, for the proximity of his land to the street is what gives value to the abutter's property."

In discussing the question as to whether the claimants in that case were entitled to the damage caused by the necessary construction and proper operation of shafts in the streets in front of their property, it was said:

"The city is liable for the physical injury to the abutter's property caused by the shaft, the same as it is for that caused by the shield. Both were necessary in order to build the road, and no negligence is claimed or shown in the use of either. Any agency, even when properly used in the street, not for the improvement thereof, but to promote a business enterprise of the city, which inflicts physical injuries upon the property of abutting owners, imposes a liability that should be met by the city voluntarily, if it chooses, or by an award in condemnation proceedings, if the owner presents and proves his claim within the time and in the manner provided by law."

And, in discussing the question of the measure of damages, it was held that the measure of damages should be adopted to the actual injury; that the damages were owing to the disturbance of lateral support, which results in a settling of the soil and thus causes physical injuries to the adjoining buildings. "Therefore, when those physical injuries are properly valued in money, a simple, direct, and just measure of damages is applied." And that the proper measure of damages was the full value of the fee taken, "subject to the public easement of passage, and, both as to naked abutters and those who own the fee, the amount, measured in money, of the physical injuries inflicted

and those which with reasonable certainty will be inflicted upon the abutting property by interference with lateral support through the proper construction and operation of the road, including the rental value of the premises during the period, if any, while they are actually untenantable."

I cannot see why this decision does not answer every question presented in this case. Here was an appropriation by the city of a public street upon which the plaintiff's property abutted, for a purpose not a street use. In the necessary construction of those docks, the whole street was excavated, so that the plaintiff lost for a period of two years all access to his property, and thus was deprived of its use for that period. In addition to that, a large portion of the plaintiff's property fell into the excavation caused by the city to secure a proper foundation for its docks which destroyed the use of the property during the period if he could have obtained access to it over the adjacent property. This was a direct trespass upon the plaintiff's property which resulted in damage to the plaintiff, destroying the use of the property, and was, as I view it, an appropriation of the plaintiff's property for the period during which the plaintiff was deprived of its use. This seems to me to be entirely different from the consequential injury caused to abutting property by regulating and grading of streets, or by the construction of a sewer and such other purpose as is recognized as a street. The damages inflicted were direct and not consequential, caused by the substantial appropriation of the plaintiff's property for use by the city during the time that the docks were in the course of construction; but, as I understand the decision of the Court of Appeals, whether or not this damage was consequential or direct as the improvement or use to which the plaintiff's property was put, was not for a street purpose, it was an appropriation of property for which the city, as well as a railroad corporation, must pay the resulting damage.

I agree with Mr. Justice DOWLING that in this case, a court of equity having assumed jurisdiction where it appeared on the trial that the necessity of equitable relief had passed in consequence of the restoration of the street to its former condition, the court was then bound to proceed and award the damage sustained, where there was no request by either party that the question of the amount of damage should be submitted to the jury.

I think, therefore, that as the plaintiff was clearly entitled to the damages caused by the appropriation of the city of its property, including the easement in Twenty-Second street, the plaintiff was entitled to substantial damages, and I think it was error for the court to dismiss the complaint.

The judgment should therefore be reversed, and a new trial ordered, with costs to appellant to abide event.

LAUGHLIN and MILLER, JJ., concur.