SHAW'S JEWELRY SHOP, Inc., v. NEW YORK HERALD CO.

(Supreme Court, Appellate Division, First Department.    December 30, 1915.)

1. NUISANCE ⬙48—PLEADING AND PROOF.
    In an action to restrain a nuisance and for damages, under an allegation of damages from the operation of an automatic baseball score board only, recovery cannot be had for damages from the operation of a stereopticon and screen.
    [Ed. Note.—For other cases, see Nuisance, Cent. Dig. §§ 113, 114; Dec. Dig. ⬙48.]

2. INJUNCTION ⬙11—WHEN ISSUABLE—PRESENT OR THREATENED INJURY.
    Where, under a prayer for injunction restraining the use of an automatic baseball score board as a nuisance, the proof was that its use had been abandoned before bringing the action, and that threatened future use would not damage the plaintiff, since the defendant's lease would ex-

⬙For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

pire before the board could again be used for baseball, plaintiff was not entitled to the relief prayed.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 9, 10; Dec. Dig. ⊕—11.]

3. NUISANCE ⊕—49—PUBLIC NUISANCE—PRIVATE DAMAGE—EVIDENCE—SUF-
.   FICIENCY.

Evidence that defendant operated a baseball score board, which drew 30,000 to 40,000 people to the street in front of its building, that the street thereby was congested in front of plaintiff's store, so as to require 90 policemen to handle the crowd, that traffic was restricted to one side of the street, and kept moving, so that persons could not view plaintiff's show windows, and preventing entry to his place of business, was sufficient to show a nuisance, for damage resultant upon which plaintiff could recover.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. §§ 115–117; Dec. Dig. ⊕—49.]

4. INJUNCTION ⊕—195—RELIEF AWARDED.

Where the evidence in an action to enjoin the use of a baseball score board, which attracted crowds and interfered with plaintiff's business, showed ground for the relief prayed at the time of commencement of the action, but at the time of the decree the acts complained of had been stopped, equity could nevertheless retain jurisdiction to award damages for the injury caused, though the injunctive relief prayed could not be granted.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 415; Dec. Dig. ⊕—195.]

5. NUISANCE ⊕—23—PRIVATE NUISANCE—RELIEF—WHEN GRANTED.

Though equity is slow to interfere with the use of private property for a legitimate business, it will restrain such use as injures or destroys other property.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. §§ 55–59; Dec. Dig. ⊕—23.]

6. NUISANCE ⊕—50—EXCESSIVE DAMAGES.

Evidence that defendant operated a baseball score board, which drew 30,000 to 40,000 people to the street in front of its building, that the street thereby was congested·in front of plaintiff's store, so as to require 90 policemen to handle the crowd, that traffic was restricted to one side of the street, and kept moving, so that persons could not view plaintiff's show windows, and preventing entry to his place of business, was sufficient to sustain a verdict of $729 for plaintiff for 11 days' operation of the score board.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. §§ 118–127; Dec. Dig. ⊕—50; Damages, Cent. Dig. §§ 198, 397.]

Appeal from Special Term, New York County.

Action by Shaw's Jewelry Shop, Incorporated, against the New York Herald Company. From a judgment for plaintiff, defendant appeals. Modified and affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGH-LIN, SCOTT, and DOWLING, JJ.

Robert W. Candler, of New York City, for appellant.
Benjamin Reass, of Brooklyn, for respondent.

McLAUGHLIN, J. In October, 1911, and from then to and including the time of the trial of this action, plaintiff was the lessee

of a store and basement at No. 1341 Broadway, in the city of New York, where it did a retail business in jewelry and novelties. The defendant, which publishes the New York Herald and Evening Telegram, then and at the time of the trial occupied a building on the easterly side of Broadway, opposite plaintiff's store. In October, 1911, 1912, and 1913, the defendant operated on the westerly wall of its building, opposite plaintiff's store, a contrivance designated in the record as "an automatic baseball playograph," on which was reproduced each play of the baseball games in the series known as the "World's Series." Nineteen of such games were reproduced by the defendant 'on this playograph during the time mentioned, each of which commenced about 2 and continued until shortly after 4 o'clock in the afternoon. These exhibitions attracted a very large number of people, who congregated in the street and on the sidewalk in front of plaintiff's store, and on October 8, 1913, it commenced this action to enjoin the defendant from giving such exhibitions upon its building, and for damages alleged to have been sustained by plaintiff in its business by reason thereof. Between August 5 and 25, 1914, both inclusive, the defendant also displayed on a screen placed on the same wall of its building stereopticon views, bulletins, etc., relating to or connected with the European war then in progress, or some of the rulers of the nations involved. This exhibition also attracted a large number of people, who congregated in the street and on the sidewalk in front of plaintiff's store, and on August 10, 1914, the plaintiff moved, on the complaint and affidavits, for an injunction pendente lite, which was granted; the order entered being sufficiently broad to enjoin the use of both the playograph and stereopticon. The action was tried in November, 1914, and the court found that the use of the playograph and stereopticon by the defendant constituted public nuisances, and the plaintiff had been damaged by the former in the sum of $729.59, but as to the latter the evidence was not sufficient to show the amount of damage. Judgment was thereupon entered in plaintiff's favor for the amount of damage sustained by it, and perpetually enjoining defendant from the further use of the playograph, stereopticon, and screen. The defendant appeals.

[1] The appellant contends, and I think correctly, that the respondent was not entitled, under the allegations of the complaint, to any relief so far as the stereopticon and screen were concerned. There are no allegations in the complaint upon which the parties went to trial respecting the stereopticon or screen, nor was the complaint amended at the trial. The purpose of a pleading is to inform the adverse party what the one serving it claims the issues are to be determined at the trial; and at the trial the proof offered should be confined to the issues as made by the pleadings. This applies as well to an equitable action as one at law. Brightson v. Claflin Co., 180 N. Y. 76, 72 N. E. 920; Wright v. Delafield, 25 N. Y. 266; Sweet v. Marsh, 133 App. Div. 315, 117 N. Y. Supp. 930; Rubber Co. v. Goodyear, 9 Wall. 788, 19 L. Ed. 566; Simmons Medicine Co. v. Simmons (C. C.) 81 Fed. 163. Objection and exception were taken to the admission of evidence bearing upon the use of the stereopticon and screen, upon

the ground that such matters were not within the issues. Such evidence was clearly inadmissible under the pleadings, and so much of the judgment as depends upon it is therefore erroneous.

[2] As to the playograph, the appellant contends that, even if it did constitute a nuisance, which it is insisted it did not, such nuisance was abated at the time of the trial, and respondent was not, therefore, entitled to an injunction preventing its use. The playograph was last used on October 11, 1913, and the amended complaint, which was served in December, 1913, contained no allegation of any threat to use the playograph after the "World's Series" games in October of that year, and in fact it was not used thereafter. That the defendant had abandoned the use, in the manner of which complaint was made, of the playograph, stereopticon, and screen at the time of the trial, was recognized by plaintiff's counsel in his opening, in which he stated that plaintiff had no complaint to make of the use then being made of them. At the trial it also appeared that the respondent's lease of premises No. 1341 Broadway expired May 1, 1915. The playograph, according to the allegations of the complaint and proof, was only used by the defendant during the month of October each year, and therefore its use in October following the trial could not injure the plaintiff, because its lease would have expired the previous May. Under such circumstances, I do not think the plaintiff was entitled to an injunction as to that.

[3] I am of the opinion, however, that the evidence sustains the finding that the use of the playograph at the times alleged and proved constituted a nuisance, and that the plaintiff was damaged in the amount found by reason thereof. The defendant's newspapers, at the time of the exhibition, in October, 1913, announced that the number of persons who witnessed the exhibition was between 30,000 and 40,000. The exhibits in the record show the congested condition of the street and sidewalk in front of the plaintiff's store. They became so congested that between 80 and 90 policemen were required to handle the crowd. The south-bound traffic on Broadway, between Thirty-Fifth and Thirty-Sixth streets, was substantially restricted to the easterly side of the street. Pedestrians who stopped to look at goods displayed in show windows of the plaintiff's and neighboring stores were directed by the police to keep moving, and ingress and egress to and from plaintiff's store were very materially interfered with.

[4, 5] It is true that courts proceed with great caution in interfering with an owner's use of his property for legitimate business; but it must be remembered that such use must not only be legitimate, but reasonable, having due regard to the rights and interests of other property owners. In other words, one cannot use his own property in such a way as to injure or destroy his neighbor's. It is for this reason that injunctions have been granted restraining unusual displays in show windows, which were calculated to and did attract large crowds, to the injury of other property owners. Elias v. Sutherland, 18 Abb. N. C. 126; Jacques v. National Exhibit Co., 15 Abb. N. C. 250; Rex v. Carlile, 6 C. & C. 636. The use of the playograph was

calculated and intended, not only to attract large crowds in front of the defendant's premises, but to keep them during the progress of the games which it reproduced. I am clearly of the opinion that its use was not only an unreasonable interference with the public's rights in the street, but especially with the plaintiff's use of its property; and while the plaintiff is not now, for the reasons already indicated, entitled to injunctive relief, it was at the time the action was commenced. The jurisdiction of equity depends upon the position of the plaintiff and the relief to which he is entitled at the time the action is brought, while the measure of relief is always adapted to the situation at the time of the decree. It is for this reason it has many times been held that, when a court of equity has once acquired jurisdiction over a cause for any purpose, it may retain the cause for all purposes, and proceed to a final determination of all the matters at issue. Van Allen v. N. Y. E. R. R. Co., 144 N. Y. 174, 38 N. E. 997; Valentine v. Richardt, 126 N. Y. 272, 27 N. E. 255; Ogden v. City of New York, 141 App. Div. 578, 126 N. Y. Supp. 189; Tucker v. Edison Elec. Ill. Co., 100 App. Div. 407, 91 N. Y. Supp. 439, affirmed 184 N. Y. 548, 76 N. E. 1110. The plaintiff, therefore, was entitled to recover in the action such damages as had been sustained by reason of defendant's wrongful act, even though the equitable relief prayed for would not be given. Where a business is interrupted and loss sustained, evidence as to the falling off in business, with loss of income, all go to show the injury to the usable value of the property damaged. St. John v. Mayor, 6 Duer, 315; Bates v. Holbrook, 89 App. Div. 548, 85 N. Y. Supp. 673; Barnes v. Midland R. R. Terminal Co., 161 App. Div. 621, 146 N. Y. Supp. 1033.

[6] The trial court found the plaintiff's damage to be $729.59, and while the evidence in support of this finding is not as satisfactory as might be desired, nevertheless I think it fairly sustains the finding. It follows that the judgment, so far as it awards damages should be affirmed, and so far as it affords injunctive relief should be reversed.

The judgment, therefore, is modified as indicated in the opinion, and, as thus modified, affirmed, without costs to either party. The findings of fact, in so far as they relate to the stereopticon and screen, and the conclusions of law, in so far as they award injunctive relief, are reversed. Settle order on notice. All concur.