C.F. v J.D. (2024 NY Slip Op 51777(U))

[*1]

C.F. v J.D.

2024 NY Slip Op 51777(U)

Decided on December 17, 2024

Supreme Court, New York County

Chesler, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 17, 2024
Supreme Court, New York County

C.F., Plaintiff,

against
J.D., Defendant.

Index No. 365306/2024

Counsel for Plaintiff:
Rower LLC
419 Park Avenue S, Fl 18
New York, NY 10016
By: Kara M. Bellew, Esq. & Jamie N. Caponera, Esq.
Counsel for Defendant:
Pryor Cashman LLP
7 Times Square
New York, NY 10036
By: Matthew Marcus, Esq.

Ariel D. Chesler, J.

BACKGROUND
The parties filed family offense petitions [FN1]
seeking the protection of themselves and their daughter against each other in the Family Court of New York County. Each party was granted a Temporary Order of Protection both for their benefit and for their daughter's benefit. The parties then sought consolidation of those family court proceedings into this matrimonial action. This Court consolidated the actions and now faces a motion and cross-motion where each party seeks dismissal of the other's family offense petition.

DISCUSSION
The standard for dismissal of a Family Offense Petition is well-established. "A family offense petition may be dismissed without a hearing where the petition fails to set forth factual allegations which, if prove[n], would establish that the respondent has committed a qualifying family offense. In determining whether a petition alleges an enumerated family offense, the petition must be liberally construed, the facts alleged in the petition must be accepted as true, and the petitioner must be granted the benefit of every favorable inference."(Matter of Bodurin v Bodurin, 221 AD3d 811, 812 [2d Dept 2023][internal citations omitted]).
I. The Father's Petition is Fatally Defective
The Court is compelled to dismiss the petition without prejudice as it fails to comply with not only two key governing provisions of Article 8 of the Family Court Act and controlling case law but also the principle that pleadings must provide sufficient notice.
Initially, the Father's Petition fails to comply with Family Court Act sections 812 and 821. Section 812 provides an exhaustive list of the family offenses that can be alleged under Article 8. In failing to allege any family offense, the Father's Petition is fatally non-compliant with section 812 because absent an enumerated offense, a petition cannot survive dismissal. (Matter of Rachel L v Abraham L., 37 AD3d 720, 721-722 [2d Dept 2007]["Criminal acts not specifically enumerated in the statute are deemed excluded, and the mother's petition failed to allege any of the enumerated offenses."]; Matter of Paulette PG v Evan CG, 26 Misc 3d 323, 326 [Fam Ct, Bronx County 2009, Masley, J.]["If the petitioner fails to allege an act listed in Family Court Act § 812, the Family Court lacks jurisdiction."]; Robert V. v Guastvo R., 238 NYLJ 14 [Fam Ct, NY County 2007, Lupuloff, J.]["A family offense petition, to be facially sufficient, must allege that the victim suffered actual harm of one or more of the enumerated offenses in FCA 812[1]."][internal emphasis supplied]).
Similarly, section 821 provides that for a family offense proceeding to be properly "originated," and thus properly within the Court's jurisdiction under the Act, an enumerated family offense needs to be specifically alleged. FCA § 821 provides,
A proceeding under this article is originated by the filing of a petition containing [. . . ] [a]n allegation that the respondent assaulted or attempted to assault his or her spouse, or former spouse, parent, child or other member of the same family or household or engaged in disorderly conduct, harassment, sexual misconduct, forcible touching, sexual abuse in the third degree, sexual abuse in the second degree as set forth in subdivision one of section 130.60 of the penal law, stalking, criminal mischief, menacing, reckless [*2]endangerment, criminal obstruction of breathing or blood circulation, strangulation, identity theft in the first degree, identity theft in the second degree, identity theft in the third degree, grand larceny in the fourth degree, grand larceny in the third degree, coercion in the second degree or coercion in the third degree as set forth in subdivisions one, two and three of section 135.60 of the penal law, toward any such person. (Id. at §1[A]).
Here, the Father's petition alleges no family offense at all; he alleges conduct but does not specify which family offense he is alleging. Thus, under section 821, the Father's Petition is fatally defective on its face rendering the proceeding not properly "originated." (See Matter of Lisa T. v King E.T., 147 AD3d 670, 674 [1st Dept 2017, Gesmer, J., dissenting in part]["Section 821 provides that a proceeding under article 8 must be commenced by a petition alleging that the respondent committed one or more of the enumerated family offenses."]; Brennan v Anesi, 283 AD2d 693, 694 [3d Dept 2001]; Evan CG, supra at 325 ["If a party fails to allege one of the family offenses enumerated in Family Court Act § 821, the action will be summarily dismissed without even proceeding to trial."]).
This failure to properly originate the proceeding places the Petition beyond this Court's jurisdiction and requires dismissal as a matter of law. (Dyer v Cahan, 150 AD2d 172, 173 [1st Dept 1989]["[W]here subject matter jurisdiction is lacking, an action must be dismissed."]; see e.g., Metropolitan Transp. Authority v Terminal Drago Shine Stands, Inc., 119 Misc 2d 10, 13 n. 3 [Civ Ct, NY County 1983, Sklaver, J.]["The court is required to dismiss, sua sponte, an action or proceeding if the court lacks subject matter jurisdiction even if the issue had not been raised by the parties."]).[FN2]
Further, "Family Court Act § 821 is the key to the door[.]" (Matter of Paulette PG v Evan CG, 26 Misc 3d 323, 326 [Fam Ct, Bronx County 2009, Masley, J]; see also, Matter of Lisa T. v King E.T., 30 NY3d 548, 551 [2017]["A family offense proceeding is commenced by the filing of a petition alleging the commission of a family offense between parties with the requisite familial relationship, and the petition typically seeks an order of protection."]).
Moreover, the fundamental principles of notice and due process require this Court to dispense with a petition that fails to allege a cause of action. (See CPLR § 3211[a][7]). Indeed, "[t]he purpose of a pleading is to inform the adverse party what the one serving it claims the issues are to be determined at the trial. And at the trial the proof offered should be confined to the issues as made by the pleadings. This applies as well to an equitable action as one at law." (Shaw's Jewelry Shop v New York Herald Co., 170 AD 504, 506 [1st Dept 1915]; see also, Keller v Prince, 76 Misc 522, 523 [1st Dept 1912]["Pleadings are intended to apprise parties of the issues which they must meet; they are not intended as a means by which an unwary suitor may be trapped."]Here, the Father's facial failure directly contravenes the purpose of the petition. To defend against a family offense, the Mother must have notice of which offense(s) she must [*3]defend against.
The Father's argument in reply that this procedural defect is not fatal misapprehends his cited Third Department authorities. Critically, the Father's position fails to appreciate the factual distinctions between his cited authorities and his petition.
The Father first cites to Matter of Pamela N. v Nel N.; however, his reliance is misguided. (93 AD3d 1107 [3d Dept 2012]). In Pamela, "the mother checked all boxes on the petition form listing those enumerated offenses." (Id. at 1108). The petition at issue in his other authority likewise alleged an enumerated family offense. (Matter of Awawdeh v Awawdeh, 217 AD3d 1109, 1110 [3d Dept 2023]["In 2021, petitioner commenced this proceeding in Washington County, where she had moved, and alleged that respondent committed various family offenses."]). That is the absolute opposite of the Father's Petition, which alleged not a single offense enumerated under Article 8.
The searching review discussed in Pamela the Father argues this Court should engage in was not necessitated just because a family offense petition was before the Court but rather because the Petition itself specifically alleged every family offense. (Pamela N.., supra at 1109). The Father's proffer that he should be afforded the same searching review when he has not alleged any family offenses would turn pleading on its head and force this Court to find the Father's cause of action, not test the one he is stating.
Further, the Father's interpretation of Pamela would not only vitiate its own reasoning but would nullify the FCA § 821. Pamela began its discussion by making clear, "family offense proceeding is originated by filing a petition alleging that, among other things not here in issue, the respondent committed one of the enumerated offenses against, among others, a spouse, former spouse or child." (93 AD3d at 1108 citing, FCA § 821). Here, the Father's Petition does not meet the threshold origination issue because it does not "allege[] [ . . . ] the respondent committed one of the enumerated offenses." (Id. [internal emphasis supplied]). In fact, contrary to the very language of Pamela, the Father fails to allege even "one of the enumerated offenses."
Similarly, in the other cited authority, Matter of Awawdeh, the Petition alleged, among other enumerated family offenses, the enumerated offense of "harassment in the second degree" and after a hearing the Court found the respondent to have committed "aggravated harassment in the second degree and disorderly conduct." (217 AD3d at 1110). The holding therein is related to the Court's authority to make post-hearing findings about family offenses that were not specifically alleged in the petition but were related to the allegations in the petition (Id. at 1111). Here, the Father inappropriately applies this post-hearing rule to this dismissal motion. 

Accordingly, the Father's reply argument would ignore the Family Court Act and is too attenuated from the Third Department's holdings. Simply, he offers an improper analogy between this case and the cited authorities.
On the other hand, the Court of Appeals recently decided a case that offers a proper analogy to this case and unequivocally supports the instant dismissal. In People v Saenger, the Court of Appeals held, "Defendant contends that the failure to specify the current misdemeanor offense in the count of the indictment charging him with aggravated family offense rendered that count jurisdictionally defective. We agree." (39 NY3d 433, 437-38 [2023]). The Court of Appeals made clear, "[m]erely alleging that the defendant has committed one of those offenses, without specifying which one, does not provide the defendant with notice sufficient to enable the defendant to prepare a defense, nor does it sufficiently allege an element of aggravated family offense, i.e., the commission of a particular specified misdemeanor offense." (Id. at [*4]439[internal emphasis supplied]). The Father's Petition is just like the Saenger indictment — it does not say which enumerated family offense is being prosecuted. Accordingly, the plain language of the Statute, the long-standing principle of notice, and the controlling authority compel the dismissal of the deficient petition.
The Father also argues that the Wife cannot raise her procedural argument because she did not demand a Bill of Particulars. This misapprehends the function of the Bill. A Bill of Particulars clarifies the stated factual allegations in the Petition  it does not permit the insertion of new claims or causes of action. (See e.g., Quinones v Long Is. Jewish Med. Ctr., 216 NYS3d 750, 751 [2d Dept 2024]["Nor can a bill of particulars 'add or substitute a new theory or cause of action' not asserted in the complaint."] citing, Castleton v Broadway Mall Props., Inc. 41 AD3d 410, 411 [2d Dept 2007]; see also Paterra v Arc Dev. LLC, 136 AD3d 474, 474-475 [1st Dept 2016]).
To be clear, the dismissal is made without prejudice so that the Father can reassert his claims. However, he must do so in proper form. Accordingly, the Mother's Cross-Motion seeking dismissal of the Father's Petition is GRANTED to the extent that the Family Offense Petition is DISMISSED WITHOUT PREJUDICE.
II. The Mother's Petition Sufficiently Alleges Family Offenses
The Mother's Amended Family Offense Petition alleges five family offenses: menacing in the second or third degree; harassment in the first or second degree; and attempted assault. The Court reviews the Petition, accepting all non-conclusory allegations as true and affording the Petition all favorable inferences.
The Mother's Petition is framed mostly as a response to the Father's petition. At times it completely fails to discuss any family offense and at other times it is completely introspective and not related to any conduct on the part of the Father. This Court further notes that the Petition is littered with conclusory statements. Often times it states the Father "threatened" the Mother but does not substantiate what was threatening. These conclusory statements do not receive any beneficial inference. (See e.g., Matter of Yajaira B. v Victoria B., 204 AD3d 600 [1st Dept 2022]).
a. Menacing in the third degree
Menacing in the third degree is defined as,
A person is guilty of menacing in the third degree when, by physical menace, he or she intentionally places or attempts to place another person in fear of death, imminent serious physical injury or physical injury.
(Penal Law § 120.15)
The element of physical menace is defined as, "a physical act of some sort, whether accompanied by words or not; however, words alone will not suffice A physical action that falls short of an actual 'display' of an object can be enough to establish a 'physical menace,'" (People v Britt, 62 Misc 3d 320, 324 [Crim Ct, NY County 2018]). The case law makes clear that the "gravamen" of a menacing in the third degree charge is the fear of physical injury caused by the physical act. (People v Kramer [Judy], 50 Misc 3d 27, 32 [2d Dept 2015]; see also, People v Woods, 54 Misc 3d 453, 458 [Crim Ct, Bronx County 2016]["In a pure menacing situation, there is no injury and thus no assault; nor is there an intent to cause injury and thus no attempted [*5]assault. In essence, the intent is to frighten, not necessarily injure. In this context, the consequence to the victim is the fear of injury, which parallels the consequence of an attempted assault and thus subjects the actor to criminal liability for menacing."][internal citations omitted]). Here, the allegations raised in the Mother's Petition that demonstrate a physical menace are the Father lunging out of bed at the Mother on September 14, 2024, and the Father getting in the Mother's face on March 16th.
The Court notes that the Mother makes many conclusory allegations that the Father physically threatened her but fails to substantiate them. These claims do not receive any beneficial inference on the posture of dismissal. (See e.g., Matter of Yajaira B, supra at 600).
The next element that must be shown is that the Husband intentionally or attempted to place the Mother in fear of "death, imminent serious physical injury, or physical injury." As it relates to the September 14, 2024, incident, it is undisputed that the "lunge" arose from the Mother taking a photograph of the sleeping-Father. The posture of this motion requires the Court to give the Mother every favorable inference, so it does conclude that while very weakly supported there is potential merit to the argument that the Father's lunging was intended to or was an attempt to put the Wife in fear of physical injury.
Turning to the March 16, 2024, incident, the Mother alleges the Father "got in her face." As with the September 14th incident, the liberal construction in this posture compels this Court to find this allegation survives under the family offense of menacing in the third degree even though this claim is also weakly supported by the allegations. The physical act of getting in the Mother's face with reference to the height difference she describes demonstrates that the "physical menace" of moving his body to get in the Mother's face could have been intended to put her in fear of physical safety. Accordingly, the Mother's allegations from September 14, 2024, and March 16, 2024, survive dismissal as to the family offense of menacing in the third degree.
All of the other allegations do not amount to menacing in the third degree as there was not a sufficient physical menace and thus, they are dismissed to the extent that the Mother can only argue a physical menace is shown by the March 16 and September 14 incidents.
b. Menacing in the second degree
Menacing in the second degree is defined as,
A person is guilty of menacing in the second degree when:
1. He or she intentionally places or attempts to place another person in reasonable fear of physical injury, serious physical injury or death by displaying a deadly weapon, dangerous instrument or what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; or
2. He or she repeatedly follows a person or engages in a course of conduct or repeatedly commits acts over a period of time intentionally placing or attempting to place another person in reasonable fear of physical injury, serious physical injury or death; or
3. He or she commits the crime of menacing in the third degree in violation of that part of a duly served order of protection, or such order which the defendant has actual knowledge of because he or she was present in court when such order was issued, pursuant to article eight of the family court act, section 530.12 of the criminal procedure law, or an order of protection issued by a court of competent jurisdiction in another state, territorial or tribal jurisdiction, which directed the respondent or defendant to stay away [*6]from the person or persons on whose behalf the order was issued.
(Penal Law § 120.14)
Subsections one and three of this offense are not applicable to any allegations. There is no allegation of a dangerous instrument or weapon. Further, none of these instances occurred while an active protective order was in place.
Turning to subsection two, the course of conduct and reasonable fear elements have been explained as follows:
The requirements in the statute of "reasonable fear" and "course of conduct" in the context of the facial sufficiency of an information, means that the factual allegations in the information and/or [the supporting deposition must support or tend to support the allegation that the defendant engaged in a course of conduct and that this conduct resulted in the complainant's fear which was reasonable. Menacing in the second degree may also be committed by two or more threats, express or implied, to cause serious physical injury to another person. (People v Payton, 161 Misc 2d 170, 174-75 [Crim Ct, Kings County 1994] citing, People v Goetz, 68 NY2d 96 [1986]).
The March 16th incident is facially sufficient to make out menacing in the second degree and survive dismissal. The Mother alleges the Father followed her around "closely" and then proceeded to get in her face. This alleged course of conduct, in following the Mother about the home, and doing so in close proximity then getting in her face demonstrates that there is sufficient allegations to survive dismissal. Likewise, as discussed above, the conduct of following the Mother closely then getting in her face (which must be accepted as true ) does support the inference that the Father intended or attempted to put the Mother in fear of physical injury.
The September 14th incident will not be able to prove this family offense as there is no course of conduct alleged; rather, the Mother simply alleges the Father lunged. That is not a course of conduct that is defined by a series of acts or repeated acts. Here, the singular "lunge" is neither repeated nor a series of acts. (See e.g., People v Valerio, 60 NY2d 669, 670 [1983][Singular instance of conduct does not constitute a course of conduct]; Matter of Kalyan v Trasybule, 189 AD3d 1046, 1048 [2d Dept 2020]; People v Amin, 2024 NYLJ LEXIS 1871 [Sup Ct, NY County 2024]) In contrast, the act of following the Mother and then lunging is clearly a series of acts that would make out a course of conduct. Thus, the September 14th incident fails to facially allege menacing in the second degree.
No other allegations support the inference that the Father's conduct constated menacing in the second degree.
c. Harassment in the second degree
Harassment in the second degree is defined as,
A person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person:
1. He or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same; or
2. He or she follows a person in or about a public place or places; or
3. He or she engages in a course of conduct or repeatedly commits acts which alarm or [*7]seriously annoy such other person and which serve no legitimate purpose.
(Penal Law § 240.26)
The Mother has sufficiently alleged the family offense of harassment in the second degree as it relates to the September 14th incident in that she alleges the Husband did strike and/or shove her when she alleges "I was standing in the doorway to our bedroom when Robert pushed me out of the doorway with an open hand, causing me to lose my balance."
The August 14th incident alleges the family offense of harassment in the second degree. The allegations concern the Husband allegedly engaged in multiple acts by having one argument with the mother during which he made vague threats and briefly blocked her path. These allegations demonstrate a prima facie course of conduct or that the Husband repeatedly committed acts or that his actions served no legitimate purpose. This is surely evident because of the Husband's alleged conduct of turning and making an ominous threat after following the Wife around and persisting in arguing with her. This course of conduct culminated with the Father physically blocking the Mother from leaving and threatening her with words to the effect of "this won't end well for you." This conduct demonstrates a course of conduct engaged to annoy or alarm the other person and served no legitimate purpose in that the threats and physical blocking of the Mother support the inference that these acts were intended to, and the Wife reasonably did suffer alarm or serious annoyance.
The May 27th incident sufficiently alleges harassment in the second degree. The course of conduct was shown by the Father's berating of the Mother during the car ride. Likewise, the Mother alleges the Father threatened to show the Child text messages so the Child would "hate" the Mother. This conduct of verbally berating the Mother and then following up with a threat to share information with the Child designed to have the Child "hate" the Mother fits this family offense. There is no legitimate purpose for this conduct and the Mother was reasonably justified in feeling alarm or serious annoyance due to this conduct.
The March 16th incident survives as it alleges a course of conduct of the Father following the mother, verbally berating her and then refusing to leave the room after she asked him to, as well as physical intimidation. This was a course of conduct, and it reasonably could have caused and could have been designed to cause alarm or serious annoyance.
The January 2021, April 2023, September 2023, and January 2024, incidents sufficiently allege harassment in the second degree. All these instances allege the Father engaged in persistent verbal attacks on the Mother about the parties' sex life and his displeasure therewith. Here, multiple incidents are alleged which could constitute a course of conduct; further two of these incidents are alleged to have taken place over many hours. In addition, other conduct alleged in these incidents such as locking the Mother out of a hotel room support these claims surviving. Accordingly, the persistent verbal complaints after being told to stop and the criticism that amounted to, inter alia, not allowing the Mother to sleep sufficiently show a course of conduct that reasonably was designed to and reasonably did cause the Mother to suffer serious annoyance or alarm.
d. Harassment in the first degree
Harassment in the first degree is defined as,
A person is guilty of harassment in the first degree when he or she intentionally and repeatedly harasses another person by following such person in or about a public place or [*8]places or by engaging in a course of conduct or by repeatedly committing acts which places such person in reasonable fear of physical injury.
(Penal Law § 240.25).
The Mother fails to allege any incidents that occurred in a public place or places. The only conduct that the Husband engaged in that could have reasonably placed the Wife in reasonable fear of physical injury was the March 16th incident. All other incidents either are singular and thus not a course of conduct or do not support the inference that the Mother reasonably suffered fear of physical injury. Physical injury is defined as "impairment of physical condition or substantial pain." (Penal Law § 10.00[9]). Nothing outside of the March 16th incident demonstrates a course of conduct that would support an inference as to the requisite fear element. However, where "reasonable fear" is an element of a crime, the fear must be objectively reasonable. Although the alleged conduct on March 16th may constitute harassment in the second degree, there are insufficient allegations to establish an objectively reasonable fear that the Mother faced physical injury. There is no alleged course of conduct that carried an express or implied threat of violence (People v. Demisse, 24 AD3d 118 [1st Dept 2005]). Accordingly, this claim fails and the Mother's Petition's allegation of Harassment in the first degree is DISMISSED.
e. Attempted assault in the second and third degrees
An attempt for the purposes of this family offense is defined as, "[a] person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime." (Penal Law § 110.00).
Critically, attempt offenses require proof of specific intent. (See e.g., People v Foster, 19 NY2d 150 [1967]; People v Cruz, 296 AD2d 22, 26 [1st Dept 2002]["'"The very essence of a criminal attempt is the defendant's intention to cause the proscribed result.'"] citing, People v Campbell, 72 NY2d 602, 605 [1988]), Thus, the crux of the Mother's success or failure for attempted assault requires allegations of the Father's specific intent.
Article 8's exhaustive list of family offenses includes attempted assault as well as assault in the second and third degree. (FCA §§ 812, 821). Accordingly, this Court interprets the family offense of attempted assault to be demonstrable by proving an attempt of either assault in the third degree or the second degree.
Assault in the third degree is defined as,
A person is guilty of assault in the third degree when:
1. With intent to cause physical injury to another person, he causes such injury to such person or to a third person; or
2. He recklessly causes physical injury to another person; or
3. With criminal negligence, he causes physical injury to another person by means of a deadly weapon or a dangerous instrument.
(Penal Law §120.00)
At the outset, again, there is no allegation of the use of a dangerous instrument so the third theory of proof for attempted assault in the third degree is inapplicable. Likewise, the second recklessness theory has no applicability in an attempt liability context as recklessness cannot equate to a specific intent by definition. (See e.g., In re John FF, 195 AD2d 807, 807-808 [3d Dept 1993]["The dispositional order must be reversed. Because one cannot attempt to commit a crime 'predicated upon a reckless act', it is impossible to attempt to commit assault in [*9]the third degree as that crime is defined by Penal Law § 120.00 (2)."][internal citations omitted and emphasis supplied]).
Thus, the only theory of attempted assault in the third degree that can be advanced by the Mother requires a showing of the specific intent of "intent to cause physical injury." Of the allegations brought in the Mother's Petition, none can support the inference that the Father had the specific intent to cause physical injury.
Accordingly, the claim of attempted assault in the third degree must be dismissed. 
Assault in the second degree, in relevant part, is defined as
A person is guilty of assault in the second degree when:
1. With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person; or
2. With intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument; or [. . . ]
4. He recklessly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument; or [. . .].
(Penal Law §120.05).
There is no allegation to support attempted assault in the second degree. All of the theories upon which that family offense can be proven do not apply here. First, nothing alleged would support the first theory because no conduct amounts to an "intent to cause serious physical injury." Serious physical injury is defined as "physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ." (Penal Law § 10.00[10]). Here, no proof or allegation would support the inference that there was any specific intent to cause serious physical injury. Likewise, there was no dangerous instrument alleged to be used anywhere in the Petition. Accordingly, to the extent that the Mother's Petition sought to prove attempted assault in the second degree, it is DISMISSED.
Accordingly, based on the foregoing, the Father's request for dismissal is GRANTED and the allegation of the family offense of attempted assault in the second and third degrees are DISMISSED.
III. The Father's Request to Strike is Without Merit
The Father moves under CPLR § 3024(b) to strike portions of the Mother's petition as scandalous or otherwise "hav[ing] no bearing on the allegations and cannot purport to give rise to a cause of action."
CPLR § 3024(b) provides, "Scandalous or Prejudicial Matter. A party may move to strike any scandalous or prejudicial matter unnecessarily inserted in a pleading." "A motion to strike scandalous or prejudicial material from a pleading (see CPLR 3024 [b]) will be denied if the allegations are relevant to a cause of action." (New York City Health & Hosps. Corp. v St. Barnbas Cmty. Health Plan, 22 AD3d 391, 391 [1st Dept 2005]). The appellate courts have made the standard for striking scandalous and irrelevant material under CPLR § 3024(b) clear,
When allegations in a pleading are scandalous or prejudicial, the court then reaches the second part of CPLR 3024 (b), which is to determine whether the allegation has been inserted into the pleading "unnecessarily." The word "unnecessarily" is a key word in the statute. "Unnecessarily" speaks to the matter's relevance to the action. Allegations about matters that are irrelevant to the viability of a cause of action or defense, which are also [*10]scandalous or prejudicial to the adversary party, may be stricken from the pleading. (Pisula v Roman Catholic Archdiocese of NY, 201 AD3d 88, 100 [2d Dept 2021]).
All of the allegations in the Mother's Petition, cannot be stricken because they relate to a family offense. While there are tangential points to the Mother's Petition, nothing therein is so irrelevant to warrant being stricken. A lot of the Petition builds out the allegations by the Mother by alleging a theme of abusive behavior and the Mother's feelings related to the incidents described. The inclusion of information related to the parties' discussions about their sex life cannot be stricken either. It directly relates to the purpose of the Father's alleged verbal berating of the Mother — a material consideration for the family offense of harassment in the second degree. Moreover, the Father's argument related to certain allegations being years old ignores the well-settled rule that there is no statute of limitations or laches defense for family offenses. (See e.g., Matter of Opray v Fitzharris, 84 aD3d 1092, 1092-093 [2d Dept 2011]["Allegations of a family offense are not subject to the defense of laches or statute of limitations."]).
Further, in weighing the probative value of the allegations against the prejudice, this Court finds striking any allegations would be inappropriate and too prejudicial to the Mother's ability to put forth her case. She has a right to allege the story she deems fit to present her case to the Court.. Accordingly, the Father's motion to strike pursuant to CPLR 3024(b) is DENIED.

 CONCLUSION
Based on the foregoing, it is hereby:
ORDERED, that the Father's Order to Show Cause is GRANTED IN-PART as is detailed herein; and it is further
ORDERED, that the Mother's Amended Petition's allegation of attempted assault in the second and third degrees, and harassment in the first degree are DISMISSED WITH PREJUDICE; and it is further
ORDERED, that the branch of the Father's Order to Show Cause seeking materials be stricken from the Mother's pleadings, pursuant to CPLR 3024(b) is DENIED; and it is further
ORDERED, that the Mother's Cross-Motion is GRANTED to the extent detailed herein; and it is further
ORDERED, that the Father's Family Offense Petition is DISMISSED WITHOUT PREJUDICE; and it is further
ORDERED, that the Mother's counsel shall forthwith file and serve this Decision and Order on Motion with Notice of Entry via NYSCEF.
This constitutes a Decision and Order of this Court on Motion Sequence 003.
Decided: December 17, 2024

Footnotes

Footnote 1:The Mother amended her initial petition, and the Court analyzes the amended petition; whenever referred to as the Mother's Petition, it means the Amended Petition.

Footnote 2:While this Court sits in general jurisdiction, its jurisdictional authority (here, the Family Court Act) to adjudicate a family offense proceeding is confined to the statutory authority. Accordingly, despite this Court's position of general jurisdiction, it lacks specific subject matter jurisdiction over this family offense due to the fatal non-compliance with FCA § 821. Thus, as in this case, where there is no family offense alleged, there can be no family offense proceeding.