In the Matter of the Application of the CITY OF NEW
YORK, Respondent, Relative to Acquiring Title to
Lands Required for the Opening and Extending of New
Street in the Borough of Manhattan.

OSCAR HERRMANN et al., Appellants.

Streets — legislature cannot authorize without compensation
to abutting property owners, use of street inconsistent with its
proper purpose — construction and operation of subway not a
street or public use that may be authorized without compensa-
tion — street opening — damages which may result from future
construction of subway should not be considered in street opening
proceedings — provision of Rapid Transit Act authorizing city
to use street for subway purposes does not alter rule — recovery
of damages.

1. The legislature cannot, by calling it such, transform into a
street use one which is not such, and cannot authorize without com-
pensation as against abutting owners a use of streets not included
within or consistent with their proper purposes and which are pro-
ductive of special damages to such abutting owners. And it will
make no difference with this rule whether the legislature attempts
to impose an unlawful use upon a street which has already been
opened, or upon one thereafter to be opened in ordinary street
opening proceedings.

2. Upon appeal in a street opening proceeding, complaint is made
that the commissioners in fixing consequential damages to the
remaining lands which would abut the proposed street refused to
consider the item of damages which might result from the future
construction and operation of a subway railroad through said
street, some proceedings looking to the construction of which had
antedated the vesting of title in the city and the closing of claim-
ant's evidence. *Held*, no error; that use by the city of a street
whereof it owns the fee, for the construction and operation of a
subway, is not such a street or public use that it may have the
same without extra compensation for injuries to abutting owners
who have been awarded ordinary damages incident to the con-
demnation of land for street purposes. There is, therefore, no need
to consider in street opening proceedings such damages as may
result from such use. (*Matter of Rapid Transit R. R. Comrs.*, 197
N. Y. 81, explained and followed.)

3. The fact that the Rapid Transit Act authorizes the city to use streets for subway purposes does not alter the rule in respect of a street thereafter opened, for it does not compel or authorize the commissioners in the street opening proceedings to award damages for such contemplated use if not within the class of purposes to which a street may be devoted.

4. Under the Rapid Transit Act provision is made for the condemnation of rights and easements of an abutting owner, and if the city does not voluntarily institute such condemnation proceedings other methods will be open to the property owner by which he can enforce the payment of compensation, and the possibility that he may be subjected to two proceedings is not sufficient ground for taking into account in street opening proceedings the element of damages possibly to arise from the construction of a subway.

*Matter of City of New York (New Street)*, 167 App. Div. 903, affirmed.

(Argued April 14, 1915; decided May 25, 1915.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered February 19, 1915, which affirmed an order of Special Term confirming the report of commissioners of estimate and assessment in street opening proceedings.

The facts, so far as material, are stated in the opinion.

*James A. Deering* for appellants. It was the duty of the commissioners of estimate, in appraising the appellants' damages, to have taken into consideration all the street or public uses specifically or impliedly authorized by law at the time title was acquired in fee by the city of New York, to which the new street might or could be devoted on or after the acquisition of title. (Lewis on Em. Domain [3d ed.], §§ 565, 818; Wood on Railway Law, 898, 910, 922; *Kelsey* v. *King*, 33 How. Pr. 39; *Matter of City of Brooklyn*, 73 N. Y. 179; *Sauer* v. *City of New York*, 180 N. Y. 27; 206 U. S. 536; *People ex rel. City of New York* v. *Lyon*, 114 App. Div. 583; 186 N. Y. 545; *Matter of Buffalo Grade Crossing Commissioners*, 209 N. Y. 139; *Matter of Bensel*, 115 App.

Div. 451; *Henderson* v. *N. Y. C. R. R. Co.*, 78 N. Y. 433; *South Buffalo Ry. Co.* v. *Kirkover*, 176 N. Y. 301; *N. Y., etc., Ry. Co.* v. *Siebrecht*, 130 N. Y. Supp. 1005; *Van Schaick* v. *D. & H. Canal Co.*, 20 N. J. L. 249; *Dearborn* v. *Boston, etc., R. R. Co.*, 24 N. H. 179; *Taylor* v. *Portsmouth, K. & Y. St. R. Co.*, 91 Me. 193; *Henderson* v. *City of Minneapolis*, 32 Minn. 319; *Yannish* v. *City of St. Paul*, 50 Minn. 518.) The appellants have no remedy under the Rapid Transit Act for any damage resulting to their remaining property from the construction and operation of the subway railroad in the new street. Their only remedy is in this proceeding. (Lewis on Em. Domain [3d ed.], §§ 819, 831; *Matter of City of Brooklyn*, 73 N. Y. 179; *Matter of City of Rochester*, 24 App. Div. 383; *People ex rel. City of New York* v. *Lyon*, 114 App. Div. 583; 186 N. Y. 545; *R., W. & O. R. R. Co.* v. *Gleason*, 42 App. Div. 530.) Since the enactment of the Rapid Transit Act of 1891, the construction and operation of a sub-surface rapid transit railway in any street thereafter acquired by the city of New York in condemnation proceedings is a street use, whether or not such use would be within the street uses or public uses for which title to streets in said city had been acquired prior to said act, said railway being also when constructed by the city since 1894 a part of such street. (L. 1891, ch. 4, § 24, subd. 5; amd. L. 1892, ch. 556; L. 1894, ch. 752, § 9; amd. L. 1895, ch. 519, § 30; *Sun Publishing Assn.* v. *Mayor, etc.*, 152 N. Y. 257; *Bates* v. *Holbrook*, 171 N. Y. 460; *Matter of New York District R. Co.*, 107 N. Y. 42; *People* v. *Kerr*, 27 N. Y. 188; *Kellinger* v. *Forty-second Street, etc., R. R. Co.*, 50 N. Y. 208; *Potter* v. *Collis*, 19 App. Div. 392; 156 N. Y. 16; *Matter of Third Ave. R. R. Co.*, 131 N. Y. 536.) A subway railroad in a street of the city of New York, title to which the city acquires in fee, is a public use within the uses to which such street may be lawfully appropriated by the legislative authority with-

out providing further compensation to abutting owners for any damages the construction and operation thereof may cause. (*Matter of Rapid Transit Comrs.*, 197 N. Y. 81; *Drake* v. *Hudson River R. R. Co.*, 7 Barb. 508; *People* v. *Kerr*, 27 N. Y. 196; *Kelsey* v. *King*, 33 How. Pr. 39; *Kellinger* v. *Forty-second St., etc., R. R. Co.*, 50 N. Y. 206; *Washington Cemetery* v. *P. P. & C. I. R. R. Co.*, 68 N. Y. 591; *Mahady* v. *Bushwick R. R. Co.*, 91 N. Y. 148; *Fobes* v. *R., W. & O. R. R. Co.*, 121 N. Y. 505; *Matter of Third Ave. R. R. Co.*, 121 N. Y. 536; *De Witt* v. *Elmira Ry. Co.*, 134 N. Y. 495; *Sauer* v. *City of New York*, 180 N. Y. 27; 206 U. S. 536; *Lincoln Safe Deposit Co.* v. *City of New York*, 210 N. Y. 34.) The city's acquisition of title to the land required for the new street here in question in fee for public use, included as incident thereto, by virtue of the authority given by its ancient charters and street opening and improvement statutes, the right on the part of the legislature, acting for the public, to appropriate the soil or subsurface thereof to the construction and operation of a subway railroad for the transportation of passengers without providing further compensation to abutting owners for any injury incidental thereto. (*Drake* v. *Hudson River R. R. Co.*, 7 Barb. 508; *Plant* v. *Long Island R. R. Co.*, 10 Barb. 26; *Adams* v. *S. & W. R. R. Co.*, 11 Barb. 414; *People* v. *Kerr*, 27 N. Y. 196; *Kelsey* v. *King*, 33 How. Pr. 39; *Kellinger* v. *Forty-second St., etc., R. R. Co.*, 50 N. Y. 206; *Washington Cemetery* v. *P. P. & C. I. R. R. Co.*, 68 N. Y. 591; *Matter of District R. Co.*, 107 N. Y. 42; *Fobes* v. *R., W. & O. R. R. Co.*, 121 N. Y. 505; *Matter of Third Ave. R. R. Co.*, 121 N. Y. 536; *De Witt* v. *Elmira Ry. Co.*, 134 N. Y. 495; *Sun Printing, etc., Assn.* v. *Mayor, etc.*, 152 N. Y. 257; *Sauer* v. *City of New York*, 180 N. Y. 27; 206 U. S. 536; *Lincoln Safe Deposit Co.* v. *City of New York*, 210 N. Y. 34; *March* v. *City of New York*, 69 App. Div. 1.) If we are right in our contention that the construction

and operation of the subway railroad in the new street was either a street use or public use, within the public purposes for which the street was acquired, and to which it could be actually appropriated, upon the acquisition by the city of title thereto in fee in this proceeding, and to which use it was thereupon devoted, the appellants have no other remedy than in this proceeding for the damages they have heretofore or may hereafter sustain by reason of such appropriation. The reason for this is that the law presumes that compensation was duly made when the land was condemned for the street for all injuries which might result to the abutting lands by the appropriation of the street to any duly authorized public use. (*Waddell* v. *Mayor, etc.,* 8 Barb. 95; *Lester* v. *Mayor, etc.,* 79 Hun, 479; 150 N. Y. 578; *Uppington* v. *City of New York,* 165 N. Y. 222; *Holland House Co.* v. *Baird,* 169 N. Y. 136; *Prime* v. *City of Yonkers,* 192 N. Y. 105; *Sun Pub. Assn.* v. *Mayor, etc.,* 152 N. Y. 257; *Bates* v. *Holbrook,* 67 App. Div. 25; 171 N. Y. 460; *Plant* v. *Long Island R. R. Co.,* 10 Barb. 26.)

*Frank L. Polk, Corporation Counsel* (*Terence Farley, Charles J. Nehrbas* and *L. Howell La Motte* of counsel), for respondent. The provision of our organic law that private property shall not " be taken for public use without just compensation " (Const. art. 1, § 6) simply requires that the owner shall be paid the market value of his property at the time of the taking. (*Bauman* v. *Ross,* 167 U. S. 548; *Benedict* v. *City of New York,* 98 Fed. Rep. 789; *United States* v. *Honolulu Plantation Co.,* 122 Fed. Rep. 581; *Matter of City of New York,* 107 App. Div. 22; 183 N. Y. 571; *Matter of Minzesheimer,* 144 App. Div. 515; 204 N. Y. 272; *Carhart* v. *Auburn Gas Light Co.,* 22 Barb. 297; *Bellinger* v. *N. Y. C. R. R. Co.,* 23 N. Y. 42; *City of Vincennes* v. *Richards,* 23 Ind. 381; *Imler* v. *City of Springfield,* 55 Mo. 119; *Julia Building Assn.* v. *Bell Tel. Co.,* 88 Mo. 258; *City*

8

of *Cincinnati* v. *Penny*, 21 Ohio St. 499; *Alloway* v. *City of Nashville*, 88 Tenn. 510.)   When property is acquired for street purposes it may be used without additional compensation to the abutters for all purposes which come within the category of street uses.   (*Atwater* v. *Trustees, etc.*, 124 N. Y. 602; *Chase* v. *Sutton Mfg. Co.*, 58 Mass. [4 Cush.] 152; *Plant* v. *Long Island R. Co.*, 10 Barb. 26; *Kelsey* v. *King*, 33 How. Pr. 39; *Lahr* v. *Met. El. R. Co.*, 104 N. Y. 268; *Lincoln S. D. Co.* v. *City of New York*, 210 N. Y. 34; *Sauer* v. *City of New York*, 206 U. S. 536; *Matter of Rapid Transit R. R. Co.*, 197 N. Y. 81; *Matter of Willcox*, 213 N. Y. 218; *Bradley* v. *Degnon Constr. Co.*, 157 App. Div. 237.)   The construction and operation of a subsurface railroad is not a legitimate street use and the city was not authorized in a proceeding like the present to acquire the right to either construct or operate it.   (*People* v. *Kerr*, 27 N. Y. 188; *Kellinger* v. *Forty-second St. & G. St. F. R. R. Co.*, 50 N. Y. 206; *Story* v. *N. Y. El. R. R. Co.*, 90 N. Y. 122; *Lahr* v. *Met. R. R. Co.*, 104 N. Y. 268; *Kane* v. *N. Y. El. R. R. Co.*, 125 N. Y. 164; *Knickerbocker Ice Co.* v. *Forty-second St. R. R. Co.*, 176 N. Y. 407.)

HISCOCK, J.   The city of New York instituted proceedings to acquire the fee to a certain strip of land for the purpose of opening and extending New street.   This strip intersected premises owned by the appellants and no complaint is here made in respect of the damages which were awarded for its condemnation.   The complaint is that the commissioners in fixing consequential damages to the remaining lands which would abut the proposed street refused to consider the very important item of damages which might result from the future construction and operation of a subway railroad through said street.

The petition filed by the city for the purposes of acquiring the premises in question limited such acquisi-

tion to street purposes and contained no reference to the construction of a subway, and at the time title vested in the city and at the date when the evidence was closed nothing had appeared in the proceedings to indicate the intention of the city to construct one in this locality. Before the final award was made, however, it was called to the attention of the commissioners that the city had taken proceedings looking to the construction of such subway, and that some of these proceedings had antedated the vesting of title in the city and the closing of appellants' evidence. Therefore, it will be assumed in the following discussion that it was properly brought to the attention of the commissioners, while the proceedings were still pending, that the city contemplated and had taken steps toward building the subway, and that notwithstanding this situation the commissioners refused, as matter of law and not of discretion, to consider such proposed construction in estimating the consequential damages to appellants' abutting premises. While making this assumption it is to be noted that it is not essential to appellants' argument that these facts should have thus appeared, for if their theory be correct it will be the duty of the commissioners, in any proceedings by the city to acquire the fee of land for street purposes, to consider the possibility of the construction of a subway through such street and award damages accordingly.

Under the circumstances thus summarized it is argued by the appellants that the use of a street, whereof the city has acquired the fee, for the purposes of constructing and operating a subway, is such a lawful and appropriate one that it may be made without additional compensation to abutting property owners for any damages specifically and directly resulting therefrom, and that, therefore, an abutting owner must secure his damages, if at all, for such subway use at the time when the fee is condemned for the opening of the street. In making this argument appellants simply seek to apply

to such facts and to such a situation the familiar principle that where land is taken for a street it will be presumed that damages have been awarded covering all purposes and uses to which the street may be lawfully subjected, and that, therefore, no additional compensation will be awarded for any legitimate use or treatment of the street after it has been opened, even though causing special inconvenience and loss to a property owner.

Of course the underlying and crucial question involved in this contention of appellants is the one, whether the use by the city of a street, whereof it owns the fee, for the construction and operation of a subway is such a street or public use that it may have the same without extra compensation for injuries to abutting owners who have been awarded ordinary damages incident to the condemnation of land for street purposes. If such use of such a street cannot be authorized as a legitimate and proper one as against abutting owners, then there is no need to consider in street opening proceedings such damages as may result from such use.

The learned counsel for the appellants with great learning and knowledge derived from long familiarity with kindred, if not similar, questions, seeks to establish an affirmative answer to this question on two grounds.

In the first place he relies on certain provisions of the Rapid Transit Act, under which this subway will be constructed, as making its construction and operation a street use. Some of these provisions are the ones found in subd. 5, section 21, that "in all cases the use of the streets, avenues, places and lands * * * for the purpose of a railway or railways, as herein authorized and provided, shall be considered and is hereby declared to be a public use, consistent with the uses for which the roads, streets, avenues and public places are publicly held;" also the one contained in section 63 that "the road or roads so constructed * * * shall be and be deemed to be a part of the public streets and highways of said city."

His second reliance is a series of cases wherein it has been held that the construction of a surface railroad in a street under legislative and municipal authority was such a public use of the street as might be authorized and permitted without affording to an abutting property owner any remedy or relief.

The attempt is made to strengthen both of these foundations by special reference to the case of *Sun Printing & Publishing Assn.* v. *Mayor, etc., of N. Y.* (152 N. Y. 257), where it was held, in construing the provisions of the Constitution prohibiting cities from incurring any indebtedness except for city purposes, that the construction of subways, if necessary for the welfare of the public, was a "city purpose" within the meaning of the Constitution.

I do not think that it is necessary in the consideration of the question to attempt to differentiate too explicitly or technically between a street use and a public use of such a street as New street would be. If use for a subway is either a strictly street use, or a public use not inconsistent with ordinary street purposes, it may be assumed that appellants' views are correct. On the other hand, whichever theory of use is adopted, it will remain true that even the legislature cannot, by calling it such, transform into a street use one which is not such, and cannot authorize without compensation as against abutting owners a use of streets not included within or consistent with their proper purposes and which are productive of special damages to such abutting owners. And it will make no difference with this rule for the purposes of this case whether the legislature attempts to impose an unlawful use upon a street which has already been opened, or upon one thereafter to be opened in ordinary street opening proceedings. In such a proceeding an abutting owner has received or will receive only such damages as it is estimated will arise from the use of the street for proper purposes. The fact that the Rapid

Transit Act authorizes the city to use streets for subway purposes does not strengthen the argument of the appellants in respect of a street like New street thereafter opened, for it does not compel or authorize the commissioners in the street opening proceedings to award damages for such contemplated use if not within the class of purposes to which a street may be devoted.

In urging their contention the appellants at the outset are confronted with our decision in *Matter of Rapid Transit Railroad Commissioners* (197 N. Y. 81), wherein it was held that the construction of a subway through Joralemon street in the borough of Brooklyn was not a street use and that the municipality was liable for damages caused to buildings and property of abutting owners by the construction of such subway. They contend, however, that that case may be readily and radically distinguished from the present one because Joralemon street had been opened long before the Rapid Transit Act was passed, the municipality had acquired only an easement and the fee was owned by abutting property owners and claimants in at least a majority of the claims then being considered, whereas in the present case the city is acquiring the fee for street purposes after and in the light of the Rapid Transit Act. I do not agree with this narrowing construction which is put upon that decision, and in order to better determine what was its true scope it will be desirable to consider some earlier decisions on this general subject, some of which are especially relied on by the appellants. When this has been done a consideration of the Joralemon decision which contains references to such earlier cases will, I think, make it plain that it is applicable to the present case.

The case of *People* v. *Kerr* (27 N. Y. 188) was one brought by the People and various individual plaintiffs seeking to restrain the city of New York from consenting to, and various other defendants from engaging in, the operation of a surface railroad on certain streets in the

city of New York.   The legislature had authorized the
construction and operation of such a railroad which, so
far as appears, was to be operated by horses and was to
be laid without any change of grade or other alteration
of the street or impediment to the use thereof except such
as might naturally be incident to the operation of a street
railroad.   The city was seized in fee of the bed of the
street in trust for its public use and the individual plain-
tiffs were abutting owners with no title to the bed of the
street.   Under these circumstances it was held that the
legislature had the right to authorize such use of the
streets; that it was a public use, consistent with the ordi-
nary use of the street by common vehicles, and which did
not result in the appropriation of any property either of
the city or of the individual plaintiffs, and which, there-
fore, should not be enjoined even though it did result in
some temporary and slight interference with and injury
to the use and enjoyment of the lots fronting on the streets
in question.

*Kellinger* v. *Forty-second Street & G. St. F. R. R.
Co.* (50 N. Y. 206) was an action brought by an abutting
property owner to restrain the operation of defendant's
street railroad in front of his premises on the ground that
it interfered with the use and diminished the value
thereof.   The city owned the fee of the street and the
plaintiff had no title therein.

Chief Judge CHURCH, writing for the court, reviewed
to some extent the case of *People* v. *Kerr*, stating that it
upheld the doctrine that the legislature, in the legitimate
exercise of the power of regulating public rights for pub-
lic uses, might authorize the construction of a street rail-
road on the surface of a street without change of grade,
where the municipality owned the fee, but saying that
such case did not indicate clearly what was intended to be
decided relative to the rights of abutting property own-
ers.   He then proceeded to lay down the doctrine that
abutting owners, having no title to the bed of the street,

were not so injured in respect of their property by the construction of a street railroad on the surface of a street, without change of grade, that they could enjoin the same; that such railroad was a public use of the street, and any incidental inconveniences resulting from a proper use thereof must be submitted to where the same had been authorized by the legislature.   By reference to the decision in *Fletcher* v. *Auburn & S. R. R. Co.* (25 Wend. 462) he fully recognized, however, that the construction of even a street railroad might be accompanied by conditions such as the erection of an embankment obstructing free access to abutting property, which would give rise to a right to damages even though the construction had been authorized by the legislature.

The familiar case of *Story* v. *N. Y. Elevated R. R. Co.* (90 N. Y. 122) dealt with the right of the defendant under legislative and municipal authority to construct in the streets of New York its elevated structure.   This case was considered on one theory which held the city to be vested with the fee of the street in trust, of course, for the public, and the plaintiff to be solely an abutting owner without title to the bed of the street.   It was held that the erection and operation of the elevated railroad, which to some extent obscured light, air and access to the abutting premises, and impaired their general usefulness and depreciated their value, could not be justified as a public use of the street, but that it amounted to an appropriation of the property of abutting owners for public use.   It distinguished between the so-called surface railway cases like the *Kellinger* and *Kerr* cases and the one then before the court, and attention was called to the fact that those cases simply held that a street railroad constructed under legislative authority on the surface of a street owned by the city without a change of grade, was a legitimate public use, and that those cases were not authority for the proposition that such a constant and substantial interference with the rights of abutting own-

ers, as would arise from the erection of the elevated railway structure, could be justified as a public and proper use of the street.

*Fobes* v. *Rome, W. & O. R. R. Co.* (121 N. Y. 505, 516) was an action by an abutting owner, having no title to the bed of the street, to restrain the operation of a steam railroad through the street where such use had been duly authorized and where such operation did not result in material change of grade of the street and was not exclusive, but left the passage across and through the street substantially free and unobstructed for the public use. It was held that under such circumstances there was no difference between the operation of a steam railroad and one operated by horse power, and that the same was a public use of the street which could be authorized and enjoyed without compensation to abutting owners.

Judge PECKHAM, however, in writing the opinion of the court, calls attention to the circumstances under which this principle was being laid down, and to the further one that if the use of either kind of railroad "became unreasonable, excessive or exclusive, or such as would not leave the passage of the street substantially free and unobstructed, then such excessive, improper or unreasonable use would be enjoined, and the adjoining owner would be entitled to recover damages sustained by him therefrom, in his means of access, etc., to his land." He also called attention to the fact that it was not intended in the *Story* case to overrule or change the law in regard to steam surface railroads; that that case embodied the application of what were regarded as well-established principles of law to a new combination of facts, such facts amounting, as was determined, to an absolute and permanent obstruction in a portion of a public street and in a total and exclusive use of such portion by the defendant, and which permanent, total, exclusive and absolute appropriation was illegal and wholly beyond any legitimate use of the public street.

These cases, therefore, make it plain that while the legislature might authorize the construction and operation of an ordinary surface street railroad through a street whereof the city owned the bed as a public use, and without compensation to mere abutting owners for any resulting inconvenience, there were unquestioned limitations upon its right thus to authorize the use of streets for railroad purposes, and that when such limit was passed an abutting owner would be entitled to redress for the damages which he suffered.

Therefore, when the *Joralemon* case came to this court the question quite inevitably was involved whether the construction and operation of a subway, which resulted in the permanent occupation of the subsurface bed of the street, and which, in that case, interfered with the lateral support of abutting premises, and shook houses to pieces, was, as in the case of a surface railroad, a consistent and legitimate use of a street, or like an elevated railroad structure, an exclusive appropriation of a portion of the street which destroyed rights and easements of the abutting owner and was as against him unlawful.

In my judgment the court answered the question in a manner which makes the answer substantially applicable to this case, although some of its facts are different.

It is true, as has been said, that Joralemon street was opened long before subways were considered, and that the city acquired only an easement, some of the claimants owning to the center of the street, and Judge VANN in referring to these latter cases did say that use for subway purposes was not within the contemplation of the owner of the land when he parted with the title or gave a right of way over the same for street purposes. Therefore, if this was all, the decision might fall short of meeting the present situation. But it was not. It was decided that in building the subway the city acted not in a governmental but in a proprietary capacity, wherein it was subject to the same liability as any private builder and oper-

ator of a railway, and it was also held generally that the construction and operation of a subway which resulted in exclusive occupation of the street was not "a street use as that term is known in the law." The specific question was then considered in the case of an abutting owner having no title to the bed of a street whether the use of the street for a subway was such a lawful and proper use that no consequential damages could be obtained for injuries to his property. In deciding this question reference was made to the surface railroad cases of *Kellinger* and *Fobes*, already reviewed and now relied on by appellants, and it was said: "In that class of cases, it will be observed, there was no exclusive and permanent occupation of any part of the street except by laying rails upon the surface thereof, without any change of grade, or excavation such as would disturb the stability of adjacent buildings. Such an occupation does not prevent passage with horses and vehicles over the entire street, and, while somewhat inconvenient, does not exclude travelers from any part of the highway. Those cases should be held where they are and not pushed out of their course by applying them to a situation so utterly distinct as to call for a different rule." (p. 102.) And then the conclusion was announced which was well within the doctrine of the *Story* case that an abutting owner because of the proximity of his property to the street, with its right to lateral support and other easements, was entitled to compensation for all the damages inflicted upon his property by interference with the lateral support thereof through the construction and operation of the subway.

As fortifying the correctness of this conclusion attention was called to the provisions of the Rapid Transit Act authorizing the condemnation of easements of abutting owners in order to build an underground railroad, and the inquiry very appropriately made what abutting rights did the legislature intend to include in its comprehensive command unless it was the right to lateral support and

the right to protection against physical injuries to buildings on the abutting lots.

When we consider all that was thus said and held in the *Joralemon* case, distinguishing and limiting as it does various decisions invoked by the appellants, it seems to me as already indicated that it is an authority settling against appellants various fundamental principles which are decisive of the present appeal and leading us to the conclusion that the construction and operation of a subway, even through a street whereof the city owns the fee, is not such a street or public use that it may be authorized without compensation to abutting owners for substantial damages caused thereby. This being so, it necessarily follows also that when land is condemned for street purposes it is not to be deemed that there are included in consequential damages to abutting property damages for injuries caused by the construction and operation of a subway, and, therefore, the amount so awarded in such street opening is not an adjustment or satisfaction of the latter class of damages.

It is complained that if the abutting owner may not in the street opening proceeding recover damages covering the construction and operation of a subway he may be subjected to the trouble and expense of two proceedings, and in fact it is asked how shall he recover compensation for the damages caused by the subway. In answer to the last question, it seems to me that there is no difficulty in maintaining the abutter's right to recover any damages of the latter class to which he is entitled. Attention has been called to the provisions in the Rapid Transit Act providing for the condemnation of rights and easements of an abutting owner, and if the city does not voluntarily institute such condemnation proceedings it is entirely clear that other methods will be open to the property owner by which he can enforce the payment of compensation.

So far as concerns the other objection that the conclu-

sion reached by us may result in two proceedings, I regard this possibility as quite inconsequential and unobjectionable as compared with the possibilities which would arise if the appellants' theory should be adopted that in street opening proceedings there must be taken into account the element of damages possibly to arise from the construction of a subway. In my judgment this theory and process of estimating damages would result in no end of injustice, now to the city and again to property owners. In a case where, as the result of some particular circumstances, the commissioners guessed that a subway would be constructed at some future and not far distant day, substantial damages very probably would be awarded to the abutting owner, which in the end might prove to be unmerited because of some change in plans preventing the construction of the subway. In another case where there seemed to be nothing more than a general and remote possibility that at some time a subway might be constructed and the commissioners, therefore, guessed that it would not be constructed, any damages covering this item would naturally be of a purely nominal character, and then if thereafter the subway should be constructed and operated, causing substantial damages, the property owner would be without redress.

It seems to me that nothing could be much more unfortunate or undesirable than a theory which would lead to such uncertain and unsatisfactory results as these, and that so far as considerations of expediency and justice are concerned, they favor much more the conclusions which are being adopted by us than those which are urged by the appellants.

I advise that the order appealed from be affirmed, with costs.

WERNER, CHASE, COLLIN, HOGAN, MILLER and CARDOZO, JJ., concur.

Order affirmed.