The Broad Exchange Company et al., Plaintiffs, *v.* The Curb Stock and Bond Market of New York, Inc., Defendant.

(Supreme Court, New York Special Term, November, 1921.)

Highways — nuisance — unreasonable obstruction of a street constitutes a public nuisance — injunction.

> The primary purpose of a street is for traveling, and whatever causes an unreasonable obstruction or interference therewith constitutes a public nuisance.

> Where in an action to restrain defendant, a board of trade corporation, from unlawfully occupying and obstructing a street within the financial district of the city of New York, it is clearly established to the satisfaction of the court that plaintiffs are being subjected to special damages by reason of the defendant and its members continuing to conduct in said street, in the immediate neighborhood of plaintiffs' properties located on said street, an open air market for the sale of securities, a motion for an injunction *pendente lite* will be granted.

> Such occupancy of the street by defendant and its members for business purposes constitutes a flagrant public nuisance, and had the police, as in duty bound, removed from the street all persons attempting to use it for trading purposes in the manner complained of, the application for injunctive relief would have been unnecessary.

Motion for an injunction *pendente lite.*

Parker & Aaron, for plaintiffs.

Oeland & Kuhn, for defendant.

Lydon, J.  This is a motion for an injunction *pendente lite.*  The plaintiffs in this action are the owners of valuable lands and buildings on Broad street, between Exchange Place and Beaver street, in the borough of Manhattan, city of New York, and they

move for an injunction to restrain the defendant and its members from unlawfully occupying and obstructing Broad street in the immediate neighborhood of their buildings. In the month of December, 1920, the defendant was incorporated as a board of trade corporation, and as the moving papers show it has, since June 27, 1921, conducted a stock exchange or securities market on Broad street in the highway thereof. Its business is conducted on Saturdays from ten A. M. until noon, and on all other business days from ten A. M. until three P. M. This particular section of the city is what might be called the southerly side of the financial district, and during the hours within which the defendant conducts its business, this particular section of the city is extremely crowded by the employees and officers of the numerous banks, stock exchange houses and other business offices in that immediate neighborhood. The moving affidavits and photographs attached show, that the defendant has appropriated for its private use about one-half of the vehicular roadway of Broad street about 100 feet south of Exchange Place, and in this space the members of the defendant corporation gather daily to conduct their business, and necessarily in reaching the place where they trade, they pass in great numbers over the sidewalks immediately adjoining, causing congestion and in addition, attract curious crowds upon the sidewalks who watch the operation of the brokers connected with the defendant corporation. The affidavits herein, made by some real estate experts, show that " at times, owing to the said ' Curb Market ' and the accumulation of people trading in the same and standing about as observers or sightseers, it is difficult for passers-by to make their way through the crowds, and it frequently requires elbowing and shoving to do so." It is further shown by the

complaint which is verified by the seven plaintiffs, " That during said sessions the defendant has appropriated and occupied and appropriates and occupies at the site in question a large part of the said street approximating one-half of the roadway thereof and extending for a width of about sixty (60) feet or more, all of which is regularly taken up and appropriated by the defendant's members in the conduct of said outdoor exchange or market, and from which the public is excluded and through which traffic to and fro by foot and vehicular travel is obstructed and prevented. That by collusion and understanding with the Police Department, the defendant has during said sessions caused to be separated from the roadway at the site in question, by a line of heavy posts, for the exclusive use of its members as traders in said outdoor exchange or market, said area so appropriated for the use of its members, and from which it has excluded the public, and at times has caused said space to be roped-off during said hours for its exclusive use and occupancy."

At the point where the defendant and its members conduct these operations, the width of the roadway of Broad street is forty-two feet, and the defendant assumes to rope off for its exclusive use for trading purposes, one-half of the roadway in said street, thus leaving only a small portion of the roadway for vehicular traffic, and even that space is more or less constantly used by members of the defendant in passing from the trading ground to the sidewalk. In addition to that, it is shown that both on the east and west sidewalks immediately adjoining this roped-off area, that exclusive of pedestrians actually passing the place, there are crowds of from 100 to 150 people standing on the sidewalks, who are either interested in the operations of the said trading market or are

sight-seers who block the sidewalks, while the number of persons in the roadway during said hours number from 70 to 90 persons.

The claim of the plaintiff in this action is, that the defendant is guilty of a public nuisance in assuming to appropriate for its own personal use a part of the public highway, and in doing so these plaintiffs are subjected by the said nuisance to special damages, which are not merely such as the general public are subjected to. If that is so, then the plaintiffs clearly are entitled to injunctive relief. It is abundantly settled that the primary purpose of the street is for traveling, and that whatever causes an unreasonable obstruction or interference with travel, becomes a nuisance.

The defendant claims that a large number of persons, other than members of the defendant corporation, as well as some of the members of the corporation, have, for a great many years, without objection on the part of anybody, pursued peacefully their business of buying and selling securities in that part of Broad street known as the " Curb." It further states that this practice has followed a long established and well recognized custom on Broad street, or its immediate vicinity, dating back for more than 150 years. I do not understand the force of this allegation, as I cannot believe that either the defendant's president, who made the affidavit, or the counsel for the defendant, have any idea that they have acquired any prescriptive right to use the street, and so far as the injury to the plaintiffs go, it is a continuing damage, and no length of time as alleged by the defendant would bar a complaint by the plaintiffs as against the continuance of the nuisance.

It is quite true that for a long period of time and up to about a year ago, what was known as the " Curb

Market '' was conducted at or about the same place on Broad street where the defendant and its members now operate, and the same general line of business was conducted, to wit, dealing in securities which are not listed on the New York Stock Exchange. The great majority of those former traders were members of the New York Curb Market Association, and about one year ago the said association, the membership of which constituted the greater number of those who traded in securities on Broad street at that time, removed their highway exchange into a new building, which they purchased, in which to conduct their said business, and the said New York Curb Market Association, although now in its new exchange building at No. 73 Trinity Place, borough of Manhattan, city of New York, continues to be known as the '' Curb Market.'' Upon the members of the said association leaving the Broad street site, the members of the defendant, and some outsiders, continued to trade in securities on Broad street where the members of the former Curb Market Association had conducted business, and in the year 1920 this defendant was incorporated, after the New York Curb Market Association had removed to indoor quarters. It is on the theory of succession, apparently, that the defendant and its members claim to have a right to trade on this portion of the highway because their alleged predecessors traded on that site prior to the erection of the buildings owned by the plaintiffs.

The moving affidavits and the complaint clearly point out the special damages which the plaintiffs claim to have suffered. All the buildings and premises owned by the plaintiffs are located in a block on Broad street, between Exchange Place and Beaver street; the said block being about 465 feet in length, and at the site in question the width of the roadway of Broad

street is slightly over 42 feet and continues to broaden in width to the north until at the corner of Exchange Place it reaches a width of about 52 feet in the roadway. The buildings on this block are rented for offices and banking-house purposes, and the plaintiffs have found, in one case, that prospective tenants objected to the existence of the Curb Market on said block; that objections have been registered with the plaintiff owners by their existing tenants complaining of the existence of the present Curb Market, upon the ground that it causes obstruction and congestion at the point at which it is carried on, which interferes with the freedom and comfort of travel, both foot and vehicular, along the said block, and tends to isolate these properties from other sections of the financial district; that these conditions injure the property on said block, make it more difficult to rent the same, and depress the rental value thereof.

After a careful examination of all the papers submitted on this motion, I am forced to the conclusion that the plaintiffs are entitled to an injunction, as the facts submitted clearly establish, to my mind, that the plaintiffs are being subjected to special damages by reason of the defendant and its members continuing to conduct an open-air market for the sale of securities in Broad street in the immediate neighborhood of the plaintiffs' properties.

In the case of *Wakeman* v. *Wilbur,* 147 N. Y. 657, 663, the court, said: " The obstruction of a public highway is an act which in law amounts to a public nuisance, and a person who sustains a private and peculiar injury from such an act may maintain an action to abate the nuisance and to recover the special damages by him sustained. (*People* v. *Kerr,* 27 N. Y. 193; *Davis* v. *Mayor,* 14 id. 506; *Adams* v. *Popham,* 76 id. 410; *Chipman* v. *Palmer,* 77 id. 51.) The extent

of the injury is not generally considered very important. It should be substantial, of course, and not merely nominal, and the fact that numerous other persons have been injured by the act is no ground for a denial of the relief. When the damage or injury is common to the public and special to no one, then redress must be obtained by some other proceeding in behalf of the public and not by a private action.''

Again, in the case of *Callanan* v. *Gilman,* 107 N. Y. 360, 371, the court, said: '' That the plaintiffs suffered some special damage not common to persons merely using the street for passage is too obvious for reasonable dispute. Direct proof of the damage was not needed. All the circumstances show it.'' The above language is quite appropriate to the case at bar.

Again, in the later case of *Ackerman* v. *True,* 175 N. Y. 353, 360, the court, said: '' It is well established by the decisions of this court that interferences with public and common rights create a public nuisance, and when accompanied with special damage to the owner of lands give also a right of private action to such owner, and that a public nuisance as to the person who is specially injured thereby in the enjoyment or value of his lands becomes also a private nuisance. That this encroachment upon the street was a public nuisance and that as to this plaintiff it was a private nuisance, we have no doubt.'' This language can be used with the same judicial force in the instant case, because the evidence before me shows that this improper use of Broad street has a tendency to, and actually does, impair the value of the adjoining property of the plaintiffs, and makes it more difficult to rent the same and reduces considerably its rental value. Clearly, this is a special and peculiar injury to the plaintiffs, and injunctive relief should be granted.

Attached to one of the moving affidavits are copies of articles which appeared in a newspaper known as the *New York Curb,* of June 25, 1921, which calls itself the official paper of the New York Curb Market, and which copies the affiants received from the defendant's president.   One article is entitled " City's approval of Continuance of Outdoor Trading * * *," and then recites : " Mr. Cook explained that he and the other officers of the organization had received assurances from the City authorities that Broad Street, between Exchange Place and Beaver Street, would remain open to the members as long as they wished to use it as the only real ' Curb Market.'   On the subject of strict enforcement of City Ordinances Mr. Cook added that The Curb Stock and Bond Market would see to it that none of its members or employees of members would be permitted to commit any nuisance of any kind."

Then further in the issue of July 2, 1921, it is stated that the officers of the defendant corporation had interviewed the mayor of the city and the police commissioner and had secured their assent and approval to the occupancy of the site in question by the defendant and its members, and further, that the defendant and its members would be protected in their use of the street for business purposes.   Of course, the statement that the mayor and the police commissioner had approved and assented to such use of the public street cannot be given any credence.   It is to be presumed that public officers perform their duties and careless statements in newspapers to the contrary should be disregarded in the absence of proof.   However, one fact remains self-evident and that is, that the police department for years has, by its inactivity, sanctioned this illegal use of the street by not only this defendant and its members and such others as

Surrogate's Court, Bronx County, November, 1921. [Vol. 117.

may trade there, but also the former Curb Market. The occupancy of said Broad street by the defendant and its members for business purposes is nothing short of a flagrant public nuisance, and if the police did their duty, they would remove from Broad street all persons who attempt to use it for trading purposes in the manner complained of. Had the police performed their duty this application would have been unnecessary. Motion granted, with ten dollars costs.

Motion granted.