Mary Helena Tompkins, Individually, and Others, Appellants, v. The City of New York and Others, Respondents.

First Department, December 18, 1931.

Howard C. Kelly, for the appellants.

Alfred D. Jahr of counsel [Arthur J. W. Hilly, Corporation Counsel], for the respondents.

MARTIN, J. In an equity action for a mandatory injunction the plaintiffs ask for a judgment requiring the removal of structures from street areas, and that the city of New York clear and free certain city property for the benefit of the plaintiffs; requiring the other defendants forthwith to remove their property from street areas, and perpetually enjoining and restraining the defendants from obstructing and incumbering " in an unlawful manner any of said public streets, avenues and highways; " and to recover $50,000 damages from the defendants.

The plaintiffs were the owners in fee of a large tract of land described in the complaint. In 1910 the city became the owner, by condemnation proceedings, of certain areas running through these lands to be used as public streets, for which the owners received an award of about $58,000 and were assessed the sum of approximately $57,700.

In 1913 the property owners ceded to the city of New York, pursuant to the provisions of old section 992 of the Greater New York Charter (Laws of 1901, chap. 466), additional lands for street purposes. No part of the city property, whether condemned or ceded, has been improved by the city of New York. On or about January 2, 1910, the property of the plaintiffs was leased by its owners to Thomas W. Higgs, under which lease the said Higgs remained in possession until his death. Thereafter his son, William H. Higgs, continued in possession until March 1, 1923. During their stay both father and son developed a very lucrative camp colony. At the time the camp colony was established, a water system was installed by the tenant, a sewage system consisting of 5,000 feet of sewer pipe was placed on the property, and cinder paths and roads were built. The cinder paths and roads and the

water system and sewage system were laid out between 1906 and 1923, pursuant to the plan of the tenant Higgs.

After the city had obtained title to the streets and during the occupancy of the tenant Higgs, there were erected, by and through the permission of Higgs, bungalows not only on plaintiffs' lands but also on street areas. Upon the uncontradicted testimony of Higgs this error was made because there was nothing to indicate where the streets were located. The plaintiffs say there was no incentive for Higgs to willfully misplace any bungalow, for by far the greater part of plaintiffs' lands were vacant and available.

The structures on these street areas run diagonally across and completely obstruct some of the streets, totally destroying plaintiffs' private easements of access and partly but materially impairing their private easements of access on other streets. These obstructions and incumbrances necessarily result in the occupants of the structures, in order to enter or leave their bungalows, constantly using and trespassing upon the private lands of plaintiffs.

The plaintiffs contend that they were without actual notice that some of the bungalows were not erected on their lands but were located on street areas, until October, 1926, when plaintiffs' Exhibit 15, a map dated October 23, 1926, prepared by the president of the borough of The Bronx showing encroachments on street areas running through the lands of the plaintiffs, was published. The borough president was then requested by the sinking fund commission through the comptroller to direct the removal of these structures from the street areas, but the borough president has failed to comply with that request.

On March 1, 1923, the owners resumed possession of their land, and, not knowing that some of the bungalows were on street areas, collected rent from all the bungalows in the belief that all the bungalows were on their land, until 1926, when they acquired knowledge that some of the bungalows were on street areas. As soon as the plaintiff landowners received this information, they ceased to collect rent from the bungalows on street areas and immediately volunteered to the comptroller of the city of New York access to all their records showing such collections, of which privilege the comptroller availed himself. The plaintiff landowners then requested the sinking fund commissioners, at a meeting held November 10, 1926, to arrange for relocating the bungalows, and offered to save the bungalow occupants from any expense incident thereto, and through their attorney the next day notified the comptroller in writing of such demand and willingness to make such arrangement, and also of their opposition to the city perpetuating the confused situation.

Notwithstanding plaintiffs' protest against the continued use of

street areas in front of their lands for dwelling purposes, the city, acting through the sinking fund commission, refused to remove the bungalows and claimed the right to retain the bungalows on street areas and to rent the same, and adopted and ratified the occupancy of the street areas, and collected rent from these bungalows for a period of two years from January 1, 1927, ending December 31, 1928, amounting to $23,190.59. After completing its examination of the plaintiff landowners' records the city instituted an action for the money it claimed to be due, and the plaintiff landowners settled the city's claim by the payment of $16,000, which sum was paid upon condition that the city would remove all the structures on street areas without delay.

The city then proceeded to fulfill its promise to clear the street areas, and the sinking fund commission unanimously adopted resolutions requiring and directing the Bronx borough president to effect the immediate removal of the structures on street areas. Upon the borough president's refusal again to follow the direction of the sinking fund commission, this action was instituted.

All the members of the sinking fund commission and certain public officials, in order to have all necessary parties before the court, were made parties defendant, although all were in favor of the clearing of the streets, having formally passed the resolution of the sinking fund commission, and the only recalcitrant official being the president of the borough of The Bronx.

In an effort to secure the removal of the bungalows in question the plaintiff obtained a mandamus. The Appellate Division reversed the order of mandamus, stating it was not the proper remedy. The Court of Appeals affirmed that finding. (*Matter of Tompkins* v. *Bruckner*, 223 App. Div. 831; 248 N. Y. 594.) Both courts held that the plaintiffs' remedy was under the charter, but plaintiffs have pointed out that the borough president has failed or refused to comply with their request to act under the charter.

The plaintiffs assert that this action is their only remedy. After the present action was commenced, the corporation counsel appeared for the city of New York and all of its officials, including the Bronx borough president, and made a motion at Special Term, Bronx county, for judgment dismissing the complaint upon the ground that the complaint did not state facts sufficient to constitute a cause of action, basing its contention upon a memorandum of the Appellate Division in a previous unsuccessful mandamus proceeding, which read: " Petitioners' relief is through sections 432 to 436 of the Greater New York Charter." (223 App. Div. 831.)

These sections provide that a property owner may apply for street improvements to the local board, consisting of the borough

president and the alderman of the district in which the property is situated. The court at Special Term denied the motion, holding that plaintiffs were entitled to maintain this action. The corporation counsel appealed on behalf of the city, the borough president and the other city officials to this court, where the order of the Special Term was affirmed (228 App. Div. 771). The holding of the Special Term and the affirmance thereof by the Appellate Division established the law of this case, to the extent of holding that plaintiffs had a good cause of action and were entitled to judgment, provided the defendants interposed no affirmative defense at the trial and that the plaintiffs proved the allegations of their complaint. All of the public officials, including the borough president, defaulted in answering, and the corporation counsel interposed an answer on behalf of the city of New York alone, which answer consisted of denials.

It is the contention of the appellants on this appeal that all the allegations of the complaint were proved, nearly all of them being matters of record, and that a comparatively small amount of testimony was needed, most of the facts being absolutely undisputed. There is no contention that plaintiffs did not prove the allegations of the complaint. The defendant the city of New York rested on plaintiffs' case and offered no proof, and the court without further consideration dismissed the complaint upon the ground that plaintiffs' relief was through sections 432 to 436 of the Greater New York Charter.

The plaintiffs not only established the facts alleged in the complaint but proved that the sinking fund commission has several times requested the borough president to remove the bungalows from the street areas in question, and that plaintiffs have been unable to secure any action by the borough president.

The plaintiffs are entitled to redress. All other remedies having been refused, the court correctly held that this action was proper. The law appears to be well settled that plaintiffs are entitled to compel action by those charged with the duty of acting. The sinking fund commission realized the justice of the plaintiffs' claim and ceased collecting rents, and the city is not now collecting anything from these tenants on city land.

The plaintiffs are entitled to have these streets properly opened so that their lands and buildings abutting thereon may be used for dwelling purposes. The sinking fund commission has realized that proposition by refusing to collect rents from the bungalows which are located on the areas condemned or ceded for public streets. We now have a condition where public property is being used by people who are not paying anything to the city for such use and at

the same time preventing a proper use of the adjoining property by the people who are paying taxes and are entitled to use their property and the streets in front thereof.

In *Carpenter* v. *City of Buffalo* (137 Misc. 618) the court said: " Having acquired these lands for street purposes, the city is not using, and never has used, them for any public purpose at all, but is renting the buildings thereon, after the manner of the ordinary private landowner; and to the abutting property owner, who protests that access to her property is almost shut off, and that she is damaged thereby, it says, after the manner of the private land-owner: ' Since I have acquired and paid for this land, I may use it as I please.'

" The city cannot thus assume the guise of a private individual. It is a public corporation created by law for certain governmental and administrative purposes. It may ' acquire and hold all such property * * * necessary to the proper exercise of any power specifically conferred or essential to those purposes of municipal government for which it was created.' (43 C. J. 1330.) It is given the right to take one's property even against his will if for a public purpose, and it cannot use this power of eminent domain as a vehicle to step into the real estate business. A property owner who is damaged may object to this as in the nature of a nuisance, and if the damage is continuous as here, he is entitled to injunctive relief at the hands of a court of equity and is not left to his remedy by mandamus.

" He may also recover such damages as he has sustained. The case of *Matter of City of New York* (*New Street*) (215 N. Y. 109) seems decisive of this. In that case the Court of Appeals dismissed the liability of the city for additional damages to abutting owners arising from the construction and operation of a subway in a street, and said (p. 117): ' In ordinary street opening proceedings * * * an abutting owner has received or will receive only such damages as it is estimated will arise from the use of the street for proper purposes,' and again: ' Even the Legislature * * * cannot authorize without compensation as against abutting owners a use of streets not included within or consistent with their proper pur-poses and which are productive of special damages to such abutting owners.' "

In *Lahr* v. *Metropolitan Elevated R. Co.* (104 N. Y. 268, at p. 291) the court said: "An abutting owner necessarily enjoys certain advantages from the existence of an open street adjoining his property, which belong to him by reason of its location, and are not enjoyed by the general public, such as the right of free access to his premises, and the free admission and circulation of light and

air to and through his property.   These rights are not only valuable to him for sanitary purposes, but are indispensable to the proper and beneficial enjoyment of his property, and are legitimate subjects of estimate by the public authorities, in raising the fund necessary to defray the cost of constructing the street.   He is, therefore, compelled to pay for them at their full value, and if in the next instant they may by legislative authority be taken away and diverted to inconsistent uses, a system has been inaugurated which resembles more nearly legalized robbery than any other form of acquiring property."

The record does not show that the plaintiffs have proved any damages, but it does show that they are entitled to injunctive relief.

The judgment should, therefore, be reversed, with costs, and judgment directed in favor of the plaintiffs granting the injunctive relief demanded in the complaint, with costs.

FINCH, P. J., MERRELL, McAVOY and SHERMAN, JJ., concur.

Judgment reversed, with costs, and judgment directed in favor of the plaintiffs granting the injunctive relief demanded in the complaint, with costs.   Settle order on notice reversing findings inconsistent with this determination, and containing such new findings of fact proved upon the trial as are necessary to sustain the judgment hereby awarded.