ALFRED RUSSO, Doing Business as RUSS-BLACK FISH COMPANY, and Others, Plaintiffs, *v.* WILLIAM FELLOWES MORGAN, JR., Commissioner of Markets of the City of New York, and the CITY OF NEW YORK, Defendants.

Supreme Court, Special Term, New York County, May 27, 1940.

*Frank L. Ippolito*, for the plaintiffs.

*William C. Chanler, Corporation Counsel [Charles C. Weinstein* and *William Jay Hoff* of counsel], for the defendants.

WALTER, J.  Prior to May 1, 1940, for various periods ranging from three to twenty years, the plaintiffs were dealers in fish, which they sold from stands in the roadway of South street between Beekman street and Peck slip under permits from the department of markets of the city of New York.  Each leased a small space on one of the upper floors of buildings abutting on South street which they call offices and which doubtless were in fact used for making and keeping such limited records as their business required, and some of them had telephones over which orders sometimes were taken, and one of them also had space in the cellar of one of the buildings abutting on South street.  No sales of fish were made in the leased spaces in the buildings and no fish was kept there, except that the plaintiff who leased cellar space in addition to office space sometimes stored there such fish as he had to keep overnight.  The rent paid for the space inside the buildings was ten dollars or fifteen dollars per month, except that in the case of one plaintiff it was fifty dollars per month.

These plaintiffs were not the only persons who had stands in the roadway of South street for the selling of fish.  On the contrary, the entire roadway in front of the block in question was and is filled with such stands.  They form a part of what popularly is known as Fulton Fish Market, which long has existed and is widely known and sometimes has been referred to as F. F. M.

On April 4, 1940, the board of estimate of the city of New York, upon the recommendation of the commissioner of markets and pursuant to sections 261, 269 and 270 of the Agriculture and

Markets Law, adopted new rules and regulations governing this market, or at least the part thereof which is here involved. Such rules provide that applicants for permits in such market must be the owners or tenants of the whole or part of " the store in front of which the stand is situated," and that the store must be on the street level and devoted exclusively to the sale of fish at wholesale, and that the fact that the applicant is the owner or tenant or has an office in the premises in front of which the stand is to be located shall be insufficient to entitle the applicant to a permit for a stand in front of such premises.

Under those rules the plaintiffs' permits have been either revoked or renewal thereof refused, and since May 1, 1940, they have been excluded from the street spaces previously occupied by them. They claim that these new rules are arbitrary, unreasonable and discriminatory, and do not serve any useful or aesthetic purpose or promote public health or safety or public business or general prosperity; and this action is brought by them to obtain a judgment (a) declaring that the rules violate the State and Federal Constitutions; (b) enjoining the city and commissioner from interfering with the maintenance and conduct of their business and (c) compelling the commissioner forthwith to issue permits to them upon payment of the prescribed fees.

It of course cannot be doubted that the city could absolutely prohibit the use of a public street as a market. Such prohibition would not violate any legal right of the plaintiffs. It possibly may be, although I of course do not decide, that the city might be compelled to prohibit such use if persons specially damaged thereby should request such prohibition. (See *Broad Exchange Co.* v. *Curb Stock & Bond Market,* 117 Misc. 82; *People ex rel. Hofeller* v. *Buck,* 193 App. Div. 262; affd., 230 N. Y. 608; *Matter of Kahabka* v. *Schwab,* 205 App. Div. 368; affd., 236 N. Y. 595; *Matter of McCoy* v. *Apgar,* 241 id. 71; *Farrell* v. *City of Syracuse,* 137 Misc. 472; *Hatfield* v. *Straus,* 189 N. Y. 208; *People ex rel. East Side Assn.* v. *Hylan,* 118 Misc. 341; affd., 202 App. Div. 745.) Here, however, the owners of the property abutting upon the street not only acquiesce in such use but evidently correctly believe that it enhances the value of their property, and I am of the opinion that so long as the city elects to permit the use of the street as a market it cannot discriminate as against some of the abutting owners, whether in fee or by leasehold.

The owner of property abutting upon a public street, even where he does not own the fee of the street, has special rights in the street in addition to those he enjoys in common with all other citizens,

and such special rights are recognized as property rights of which he cannot be deprived without compensation, and they include not only the rights of light and air and access, but also the enjoyment and use of whatever is permitted or maintained by the public authorities as a part of the street. (*Donahue* v. *Keystone Gas Co.*, 181 N. Y. 313, 319; *Kane* v. *New York Elevated R. R. Co.*, 125 id. 164, 180; *Woodruff* v. *Paddock*, 130 id. 618, 625; *Hellinger* v. *City of New York*, 181 App. Div. 254.) Where the city has used streets for other than street purposes, such as a subway and public dock, abutting owners have been held to be entitled to damages (*Matter of Rapid Transit R. R. Commissioners*, 197 N. Y. 81; *Ogden* v. *City of New York*, 141 App. Div. 578; and see *Matter of City of New York* [*New Street*], 215 N. Y. 109, and *Bradley* v. *Degnon Contracting Co.*, 224 id. 60), and the same right is recognized where the street is discontinued. (*Barber* v. *Woolf*, 216 N. Y. 7, and cases there cited.) For the city to permit the use of a street as a market and then exclude an abutting owner from the market is, it seems to me, just as much an interference with the rights of such abutting owner and consequently just as much an illegal deprivation of his property.

As it thus in my opinion is illegal to exclude an abutting owner from the use of a market which the city elects to permit upon a public street, it follows, I think, that it is equally illegal to exclude an owner who holds a part of the abutting premises by leasehold. (See *Levy* v. *Murray*, 56 Misc. 354, in which a tenant on a third story was held entitled to compel the removal of an obstruction in a street.)

Defendant commissioner says that these plaintiffs rent their so-called offices in order to qualify for a permit for a stand, but I think it obvious that the operators of the stores on the street level likewise have either bought or leased their premises for the purpose of getting the advantages of stands in the street, and it certainly is not unusual for owners and tenants in general to acquire premises because of advantages incident to the location of the premises bought or leased.

The main argument for the defendants is that the owners and tenants of street-level stores use the stands in the street as an adjunct to and additional convenience for business actually transacted in those stores, whereas the tenants of space on the upper floors transact no business in that space and use the stands in the street as their sole place of doing business, and that that difference affords a reasonable basis of classification. I do not think the proof sustains the assumption of facts contained in that

argument. The tenants of the upper floors do not actually store or sell fish on those upper floors, but they do make some use thereof and such use is not for residential but for business purposes, and, on the other hand, the owners and tenants of the street-level stores make the greater proportion of their sales from the stands on the streets. Some say that seventy-five or eighty per cent of their sales are from the stands in the street. Even as to the street-level stores, therefore, it is fairly accurate to say that the stores are incidents of the stands rather than the stands are incidents of the stores.

But even if the facts were as assumed in defendants' argument, I do not think that the differences mentioned justify a classification which deprives some abutters (using that term to include both fee and leasehold owners) of a use of the street which is accorded to other abutters.

The constitutional requirement of the equal protection of the law undoubtedly permits a wide range of discretion in classifying both persons and things, and the requirement is not violated so long as persons and things similarly situated are similarly treated. But the classification must not be arbitrary and must rest upon some ground of difference having a substantial and reasonable relation to the accomplishment of a legitimate public object (*Nashville, C. & St. L. R.* v. *Walters,* 294 U. S. 405, 429, 432; *Mayflower Farms, Inc.,* v. *Ten Eyck,* 297 id. 266; *Hartford Steam Boiler Inspection & Insurance Co.* v. *Harrison,* 301 id. 459, 461, 462), and that is true even where the regulation is one dealing with the use of city streets and highways as a place for carrying on private business. (*Hodge Drive-It-Yourself Co.* v. *Cincinnati,* 284 U. S. 335, 337, 338; *People* v. *Cohen,* 272 N. Y. 319; *Fanroth* v. *Byrne,* 252 id. 447; *Farrell* v. *Rose,* 253 id. 73; *Jones Beach Boulevard Estate, Inc.,* v. *Moses,* 268 id. 362, 368, 369.) Although, as I already have said, the city could exclude every one from any use of the street as a place for carrying on private business, the right of abutters to such use as it permits is a property right, and it is arbitrary and unreasonable to classify abutters merely upon the basis of their street-level and non-street-level occupancy.

Upon the trial some testimony was offered to the effect that the owners and tenants of street-level stores do not " break boxes " in the street, *i. e.,* they there only remove the top covering in order to exhibit the fish to prospective customers and actually remove the fish from the boxes only inside their stores, whereas tenants of upper floors actually remove fish from the boxes in the street for the reason that they have no facilities for such removal in the space

they rent upon upper floors. The evidence does not persuade me that the occupants of street-level stores are always so meticulously careful in that respect as some of defendants' witnesses would like me to believe, but if the actual removal of fish from boxes in the street be the evil aimed at, then a regulation preventing such removal would be the appropriate remedy, and that is not the regulation here complained of.

It also was suggested upon the trial that these tenants of upper floors have not as good financial standing as those having street-level stores, and also that their lower overhead costs enable them to take business from other dealers having a larger overhead — including the tenants of the city-owned market across the street. But if the object of the rules here attacked be in truth the giving of an economic advantage to others in the same business, that certainly does not tend to show that the classification therein made is reasonable instead of arbitrary. (*Mayflower Farms, Inc.*, v. *Ten Eyck*, 297 U. S. 266.)

One provision of the new rules reads as follows: " Not more than one stand shall be maintained in front of each store, irrespective of the number of individuals, partnerships, or corporations occupying the store as owners or tenants." In point of fact, however, defendants are permitting the use of the entire frontage, even to the extent of allowing the occupant of one street-level store to use the entire space in front of a store having a frontage of thirty-six feet. The rules thus cannot be sustained upon the theory that they are designed to regulate the density of use or number of users.

The plaintiffs thus are entitled to a judgment declaring that so much of the new rules as restricts the issuance of permits to owners or tenants of street-level stores arbitrarily discriminates against tenants of upper floors and deprives them of property rights incident to such tenancy, and thus denies to them the equal protection of the laws and deprives them of their property without due process of law in violation of the Fourteenth Amendment of the Constitution of the United States.

Whether or not further relief by way of injunction, prohibitory or mandatory, is necessary will be determined upon the settlement of the judgment, the attention of the parties being meanwhile called to *Socony-Vacuum Oil Co.* v. *City of New York* (247 App. Div. 163, 168).

Settle judgment upon notice.